355 So.2d 781 (1978)
Thomas E. ARCHER et al., Appellants,
v.
Seymour J. MARSHALL et al., Appellees.
No. 52041.
Supreme Court of Florida.
February 16, 1978.
J. McHenry Jones, of Jones & Welch, Pensacola, for appellants.
W. Spencer Mitchem, of Beggs & Lane, Pensacola, for appellees.
Ronald W. Ritchie, Pensacola, for Tiki House, Ltd., Holiday, Ltd., and Pelt & Reeves, Inc. as intervenors-appellants.
HATCHETT, Justice.
Chapter 76-361, Laws of Florida provides for a reduction in rent to be paid by leaseholders to the Santa Rosa Island Authority in an amount equal to the ad valorem taxes paid on that leasehold interest for county and school purposes during the previous year. Since the trial court found this statute to be unconstitutional, we have jurisdiction *782 pursuant to Article V, Section 3(b)(1), Florida Constitution (1968). We affirm the trial court's order, and hold this special act to be unconstitutional on the ground that it provides for an indirect exemption from ad valorem taxes not authorized by our state constitution.
Escambia County acquired certain property on Santa Rosa Island from the federal government, subject to a restrictive covenant which prohibits the county from selling or otherwise disposing of this property to private persons, but permits the leasing of this property to such parties. The Legislature created the Santa Rosa Island Authority to administer these lands and enacted in 1949, a law exempting these lands from ad valorem taxation.[1] Hundreds of persons entered into long term leases, renting land on Santa Rosa Island from the county agency. These lessees argue that they entered into these lease contracts, and made improvements on the land, based upon the representation that ad valorem taxes would never be levied against their interests. However, in 1971, the Legislature repealed the exemption from taxation.[2] At that time, the lessees of county property on Santa Rosa Island challenged the statute, which mandated the taxation of the leasehold interests, on the grounds that the law impaired the obligations of valid existing contracts, and that the county was estopped to levy these taxes because of prior representations to the contrary. However, in Straughn v. Camp, 293 So.2d 689 (Fla. 1974); appeal dismissed 419 U.S. 891, 95 S.Ct. 168, 42 L.Ed.2d 135 (1975), and Williams v. Jones, 326 So.2d 425 (Fla. 1975), this Court rejected their challenge to the constitutionality of the statute, and held that the Escambia County taxing authority could levy ad valorem taxes against these leasehold interests. The Court did not pass upon the question of whether the present rental payments were equitable, and noted that the leaseholders might be entitled to an adjustment of their rental payments as set forth in the leases which would "recognize any proven charge incorporated therein which was intended to be in lieu of taxes." Williams v. Jones, supra, 326 So.2d at 436-437.
In response to this problem, the Legislature passed Special Act 76-361, the pertinent provisions of which are set forth below:
"Section I. (1) ... If Escambia County shall levy ad valorem taxes against the leasehold interest herein during 1975 or any year thereafter, the annual rental payable herein, during the fiscal year commencing as of May 1st, 1976, and each fiscal year thereafter, except as otherwise provided in this amendment, shall be reduced by an amount equal to the amount of ad valorem taxes paid with respect to lessee's leasehold interest for county and school purposes for the preceding year. In event the amount of ad valorem county and school taxes paid on such leasehold interests for any year, exceed the amount of rental for the succeeding year, such excess shall be applied to future annual rentals of the lessee . .. Rentals for the period commencing May 1st, 1977, and rentals thereafter shall be adjusted as of May 1st by credit in an amount equal to ad valorem taxes for county and school purposes paid with respect to each preceding year and after adjustment no further rental shall be payable until such credits are exhausted ... Adjustment of rental shall be made upon presentation to Santa Rosa Island Authority of a paid receipt from the tax collector of Escambia County with respect to ad valorem taxes levied and collected against the leasehold interest of the leaseholder for the preceding year and Santa Rosa Island Authority shall issue a memorandum to leaseholders specifying the reduced rental and rental payment dates as adjusted ..."

*783 "In event the leasehold interest hereunder shall be exempted from or cease to be subject to ad valorem taxes in any taxable year, or if the rentals payable under original leases, for any year, by virtue of a general law, are credited against or reduce the amount payable as ad valorem taxes levied against this leasehold interest, then the rental payable for that year shall be the amount specified in the original lease, prior to this amendment."
Further relevant provisions of Chapter 76-361 are as follows:
"Section III... . Escambia County shall pay to Santa Rosa Island Authority (sometimes hereinafter called "lessor"), an amount equal to ad valorem taxes levied on leasehold interest dated on or before December 31, 1975, wherein Santa Rosa Island Authority is lessor, for county purposes for the preceding tax year ... In event rentals paid under leases wherein Santa Rosa Island Authority is lessor dated on or before December 31, 1975, by virtue of a general law, are credited against and reduce the amount payable as ad valorem taxes for any year, then the County shall not be required to make any payment in that year to Santa Rosa Island Authority."
* * * * * *
"Section VI. In event Escambia County during any year after 1975 shall cease to be authorized, by exemption or otherwise, to levy ad valorem taxes on leasehold interests on land located on Santa Rosa Island, the effectiveness of this law shall be suspended during any such year."
The trial court determined that the primary effect of this special act is to require that rentals due the Santa Rosa Island Authority on leases dated on or before December 1, 1975, will be reduced each year by the amount of ad valorem taxes for county and school purposes paid on the leasehold interests for the preceding year. In a lengthy and well reasoned opinion, the trial court found that this legislation violated our state constitution in six different respects: (1) it creates an illegal exemption from taxation on property not authorized by the state constitution; (2) its effect is to provide for ad valorem taxation at a non-uniform rate within the taxing unit of Escambia County, in violation of Article VII, Section 2; (3) it violates Article III, Section 11(a)(8), which prohibits special laws, or general laws of local application pertaining to the refund of money legally paid; (4) it is a special act pertaining to the care, custody, and method of disbursing county funds, prohibited by Article VIII, Section 1(b); (5) its effect violates Article VII, Section 10, which prohibits the use by a county of its taxing power or credit to aid any person; (6) it is a special law pertaining to the assessment and collection of taxes for state or county purposes which is prohibited by Article III, Section 11(a)(2). We agree with the trial court that the purpose and effect of this special act is to create an indirect exemption from taxation on property not authorized by the state constitution, and therefore find it unnecessary to address the additional grounds set forth by the trial court to support its conclusion.
The preamble of this special act set forth various alleged findings of fact by the Legislature: (1) that the leaseholders on Santa Rosa Island prior to December 31, 1975, leased their property and constructed buildings thereon in reliance upon the promise of the Island Authority that the leaseholders would never be subject to ad valorem taxes; (2) that as a result of the imposition of taxes on Santa Rosa Island leaseholds resulting from a legislative act in 1971, Escambia County has been unjustly enriched by improvements having an assessed value of $49 million; (3) that until December 31, 1975, it was never the intent of Escambia County, as represented by the Santa Rosa Island Authority, and the other parties to the leases, that the leaseholders should pay both taxes and rentals. The trial court examined these alleged findings of fact by the Legislature in light of the proper standard set forth by this Court in Seagram-Distillers Corp. v. Ben Greene, Inc., 54 So.2d 235, 236 (Fla. 1951), which stated:
The general rule is that findings of fact made by the legislature are presumptively *784 correct. However, it is well recognized that the findings of fact made by the legislature must actually be findings of fact. They are not entitled to the presumption of correctness if they are nothing more than recitations amounting only to conclusions and they are always subject to judicial inquiry. Moreover, findings of fact made by the legislature do not carry with them a presumption of correctness if they are obviously contrary to proven and firmly established truths of which courts may take judicial notice.
The trial court found, contrary to the Legislature's conclusions, that Escambia County has not been unjustly enriched in the sum of $49 million by those leaseholders on Santa Rosa Island who obtained their leases prior to December 31, 1975. This sum represents the total assessed value of the subject property, a large portion of which is the value of the land itself, owned by the county. The trial court in its order reasoned that since substantially all of these leases are for 99 years plus a 99 year option to renew, it cannot be said that Escambia County has or will receive any improvements of value upon the termination of the lease agreements. Certainly the improvements which have been made upon this property will have long since been destroyed prior to the end of the leases. Since these leaseholders have the equivalent of fee simple ownership, it does not appear that they have enriched the county in any manner by building on the land. The trial court recognized that there is an important distinction between rent and taxes:
While rent is paid for the forbearance and use of the land on the Island, taxes are paid for the services rendered by the County to the leaseholders in the form of police protection, fire protection, roads, a court system, etc. The leaseholders on the Island receive both the benefits of the use of the land and the benefits of the protection and services provided by the County. Thus, the county is not unjustly enriched by the fact that it charged these leaseholders with both rent and ad valorem taxes. Each charge is to compensate the County for specific benefits rendered.
Further, upon examining certain of the leases, the trial court found that some of these leases expressly contemplated that, while taxes were not assessed at the time of the agreement and might not be assessed for some time in the future, should taxes be assessed, the leaseholders would be obligated to pay them. Therefore, the trial court rejected the argument that these leaseholders constructed improvements on the property under any misrepresentation that the property would never be taxed. In addition, approximately one-third of the leases were entered into subsequent to December 31, 1971, the effective date of the legislative statute which revoked the previous tax exemption granted to these leasehold interests, and any finding of unjust enrichment in regard to these leases is without any factual basis. However, the Legislature made no distinction between leases acquired prior to 1971, and those acquired afterwards.
The trial court determined that all these various factors clearly indicate that this special act is, in essence, a tax relief bill. The bill does not even attempt to set forth any method by which certain leaseholders can be paid a definite amount equal to the sum received by the county as unjust enrichment.
The Legislature is without authority to grant an exemption from taxes where the exemption has no constitutional basis. Presbyterian Homes of the Synod of Florida v. Wood, 297 So.2d 556 (Fla. 1974). Regardless of the term used to describe the set-off, the reduction in rent afforded the leaseholders has the effect of a tax exemption and as such is unconstitutional since such exemption is not within the provisions of our present state constitution. Williams v. Jones, 326 So.2d 425 (Fla. 1975); Straughn v. Camp, 293 So.2d 689 (Fla. 1974). It is fundamentally unfair for the Legislature to statutorily manipulate assessment standards and criteria to favor certain taxpayers over others. Interlachen Lakes Estates, v. Snyder, 304 So.2d 433 (Fla. 1974).
*785 Accordingly, we hold that Chapter 76-361, Florida Statutes, Special Acts, 1976, violates Article VII, Section 3, Florida Constitution (1968), and is invalid.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, ENGLAND, SUNDBERG, and KARL, JJ., concur.
NOTES
[1] Chapter 25,810, Laws of Florida, Special Acts 1949; Sec. 192.62, Fla. Stat. (1961-1967); Sec. 196.25, Fla. Stat. (1969).
[2] Chapter 71-133, Laws of Florida, General Acts 1971; see, generally, Straughn v. Camp, 293 So.2d 689, 691 (Fla. 1974).