718 So.2d 296 (1998)
THE SEBRING AIRPORT AUTHORITY; Sebring International Raceway, Inc.; and The Department of Revenue, State of Florida, Appellants,
v.
C. Raymond McINTYRE, Property Appraiser of Highlands County, Florida; and J.T. Landress, Tax Collector of Highlands County, Florida, Appellees.
No. 97-02707.
District Court of Appeal of Florida, Second District.
September 11, 1998.
*297 Paul R. Pizzo and Hala A. Sandridge of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for Appellants Sebring Airport Authority and Sebring International Raceway.
Robert A. Butterworth, Attorney General, and Joseph C. Mellichamp, III, Senior Assistant Attorney General, Tallahassee, for Appellant Department of Revenue.
Larry E. Levy and Loren E. Levy of The Levy Law Firm, Tallahassee, for Appellee C. Raymond McIntyre.
QUINCE, Judge.
The Sebring Airport Authority (the airport authority), Sebring International Raceway, Inc. (the raceway) and the Department of Revenue (the department) challenge an order of the trial court declaring section 196.012(6), Florida Statutes (Supp.1994), unconstitutional. We agree with the trial court and affirm.
The raceway applied for an ad valorem tax exemption under section 196.199, Florida Statutes. The property appraiser denied the exemption, and the raceway and the airport authority filed a declaratory judgment action in the trial court. All parties filed motions for summary judgment, and the trial court granted summary judgment to the property appraiser and the department.[1] This timely appeal followed.
The facts of this case are not in dispute. The property is owned by the City of Sebring and leased to the raceway by the airport authority. The property is used as a racetrack with permanent seating, and annual races of vehicles are held there. This property was the subject of a prior appeal before this court involving a claim for an ad valorem tax exemption. We affirmed the trial court's denial of an exemption and the supreme court agreed. See Sebring Airport Auth. v. McIntyre, 623 So.2d 541 (Fla. 2d DCA 1993), aff'd, 642 So.2d 1072 (Fla.1994). The use of the property has not changed since the prior litigation.
The statutory provision, section 196.012(6), under which the raceway now claims an exemption was amended in 1994 and provides, in pertinent part, as follows:
The use by a lessee, licensee, or management company of real property or a portion thereof as a convention center, visitor center, sports facility with permanent seating, concert hall, arena, stadium, park, or beach is deemed a use that serves a governmental, municipal, or public purpose or function when access to the property is open to the general public with or without a charge for admission.
There is no doubt that the raceway falls within this provision of section 196.012(6). The question, however, is whether the legislature can by statutory enactment change the meaning of the term "governmental, municipal, or public purpose or function." We agree with the trial judge that the language quoted above is an impermissible attempt by the legislature to create a tax exemption that is not authorized by the Florida Constitution.
Article VII, section 3(a), of the Florida Constitution, provides for mandatory and permissive ad valorem tax exemptions as follows:
All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation. A municipality, owning property outside the municipality, may be required by general law to make payment to the taxing unit in which the property is located. Such portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation.
Thus, property enjoys a mandatory ad valorem tax exemption if the property is owned by the municipality, used by the municipality for a municipal or public purpose, and located within the municipality. See Dade County v. Pan American World Airways, Inc., 275 So.2d 505 (Fla.1973). If the municipality chooses to lease the property and permits it to be used by some other entity, then the mandatory ad valorem tax exemption ceases.
*298 For other property, whether owned by a municipality or a private entity, the constitution permits the legislature by general law to provide an ad valorem tax exemption if the property is being used for educational, literary, scientific, religious or charitable purposes.[2] However, there is nothing in article VII, section 3 that allows the legislature to exempt from ad valorem taxation municipally owned property or any other property that is being used primarily for a proprietary purpose or for any purpose other than a governmental, municipal or public purpose. To the extent that section 196.012(6) attempts to exempt from taxation municipal property used for a proprietary purpose, the statute is unconstitutional.[3]
The classes of property that may be exempted from ad valorem taxation are outlined in the constitution and include property used predominantly for educational, literary, scientific, religious or charitable purposes; businesses under a community and economic development project; renewable energy source devices and the property on which such devices are installed; and, property falling under the historic preservation provisions. Article VII, section 3 does, however, authorize the legislature, through enactment of general laws, to provide for these permissive exemptions from ad valorem taxation. No other exemptions may be enacted by the legislature because the constitution is a limitation on the power of the legislature. See Franks v. Davis, 145 So.2d 228 (Fla.1962). Thus, the specification of these permissible exemptions in the constitution excludes any other exemptions. See Hillsborough County Aviation Auth. v. Walden, 210 So.2d 193 (Fla.1968); Franks v. Davis. The legislature cannot change the tax exemption provisions of the constitution and cannot exempt a class of property for which the constitution makes no provision. See Daytona Beach Racing & Recreational Facilities Dist. v. Paul, 157 So.2d 156 (Fla. 1st DCA 1963), quashed on other grounds, 179 So.2d 349 (Fla.1965).
The legislature, therefore, presumably in recognition of this limitation, chose instead to attempt to redefine the term "governmental, municipal or public purpose or function." We recognize that the legislature may refine and redefine broadly defined terms and concepts in the constitution. Any such refinement or definition must not, however, conflict with the constitution. Cf. Alexdex Corp. v. Nachon Enterprises, 641 So.2d 858 (Fla.1994). The legislature may in fact declare what is a municipal purpose but such an enactment is subject to the provisions and principles of organic law. See City of Tampa v. Prince, 63 Fla. 387, 58 So. 542 (1912). The supreme court addressed the limitations on the legislature when redefining constitutional terms in Department of Revenue v. Fla. Boaters Ass'n, 409 So.2d 17 (Fla.1981). In Florida Boaters, the court said:
While the constitution gives the Legislature the authority to define "boats" and the other species of property excluded by article VII, section 1(b) from ad valorem taxation, the authority is not unlimited and must be exercised in a reasonable manner. The flexibility thus granted to the Legislature does not empower it to depart from the normal and ordinary meaning of the words chosen by the framers and adopters of the constitution. See, e.g., State v. Florida State Improvement Commission, 47 So.2d 627 (Fla.1950); City of Jacksonville v. Glidden Co., 124 Fla. 690, 169 So. 216 (1936).
409 So.2d at 19. The legislature's redefinition of the term in this instance must fail because the redefined term conflicts with the "normal and ordinary meaning" of the phrase "governmental, municipal or public purpose or function."
Our constitution recognizes that there are differences between governmental/municipal and proprietary functions or purposes. See Art. VIII, § 2, Fla. Const. Municipal purposes generally relate to the health, morals, safety, protection or welfare of the municipality *299 and its citizens. See City of Boca Raton v. Gidman, 440 So.2d 1277 (Fla.1983); State v. City of Jacksonville, 50 So.2d 532 (Fla.1951); Basic Energy Corp. v. Hamilton County, 652 So.2d 1237 (Fla. 1st DCA 1995). A governmental function has been defined as one having to do with the administration of some phase of government, that is, exercising or dispensing some element of sovereignty, and a proprietary function has been defined as a function designed to promote the comfort, convenience, safety and happiness of the citizens. See McPhee v. Dade County, 362 So.2d 74 (Fla. 3d DCA 1978). The operation of a racetrack does not specifically relate to either the health, morals, safety, protection or welfare of the municipality or its citizens. While it may be desirable to have such a facility and the facility may have an impact on the well-being of some of the citizens, such ancillary effects do not make the operation one that serves a municipal purpose.
The constitution, in article VII, section 3, clearly mandates the exemption from ad valorem taxation of municipal property owned and used by the municipality for governmental purposes, but only allows the legislature to exempt from ad valorem taxation other property used for educational, literary, scientific, religious or charitable purposes, purposes generally considered eleemosynary in nature. The use of the property appears to be the determinative factor in favor of exemption. There is nothing in the constitution which purports to exempt property, whether owned by a municipality or a private entity, when the property is being used primarily for a proprietary purpose. The Florida Supreme Court has recognized that the use of the property, in addition to ownership, is the determining factor when considering whether a statutory tax scheme passes constitutional muster. In Williams v. Jones, 326 So.2d 425 (Fla.1975), the court affirmed orders of the trial court which upheld the county appraiser's assessment of ad valorem taxes on commercial and residential lessees of publicly-owned property. In so doing the court said:
The operation of the commercial establishments represented by appellants' cases is purely proprietary and for profit. They are not governmental functions. If such a commercial establishment operated for profit on Panama City Beach, Miami Beach, Daytona Beach, or St. Petersburg Beach is not exempt from tax, then why should such an establishment operated for profit on Santa Rosa Island Beach be exempt? No rational basis exists for such a distinction. The exemptions contemplated under Sections 196.012(5) and 196.199(2)(a), Florida Statutes, relate to "governmental-governmental" functions as opposed to "governmental-proprietary" functions. With the exemption being so interpreted all property used by private persons and commercial enterprises is subjected to the taxation either directly or indirectly through taxation on the leasehold. [emphasis in original] Thus all privately used property bears a tax burden in some manner and this is what the Constitution mandates. [emphasis added]
Williams, 326 So.2d at 433. Although the case before us does not involve the same type of commercial enterprises found in Williams,[4] the same principles are applicable in this situation.
The airport authority and the raceway argue that the supreme court's decision in Poe v. Hillsborough County, 695 So.2d 672 (Fla. 1997), supports the argument that the legislature properly construed the term "governmental, municipal or public purpose or function." We disagree. The Poe case involves the court's determination of a proposed bond issue by Hillsborough County and the City of Tampa for a community stadium. The court was concerned with whether or not a particular clause in a stadium lease, which granted the local football team the first $2 million dollars in net revenues from nonfootball events, would change the purpose of the project. It was in this context that the court validated the proposed bond issue.
In the instant case, the entity seeking a tax exemption is a raceway. Although the raceway operates on property owned by a governmental unit, the airport authority, the operation of the raceway is a purely proprietary, *300 for profit, venture with no governmental/municipal functions. Any argument that the operation is in the public interest and thus serves a public purpose by creating jobs and generating sales tax must be rejected. Such an argument is equally applicable to a number of private enterprises, enterprises located on property leased from a governmental entity and on property owed by private parties, yet the enterprise on private property would not enjoy an exemption from ad valorem taxation. For example, a racetrack with the same type of operation and physical facility as the Sebring International Raceway but located on property that is not leased from a governmental unit would not be entitled to an ad valorem tax exemption. Why then should this racetrack because of its location on government owned property have a tax advantage by being granted an exemption?
Even property that is owned by a municipality but used by it for other than a governmental purpose loses its tax exemption. When the government operates in other than its governmental capacity, i.e., in a proprietary capacity, it too must carry its share of the tax burden. This issue was addressed by the supreme court in Markham v. Maccabee Invs., Inc., 343 So.2d 16 (Fla. 1977). There, the court reversed a ruling by the Fourth District which allowed a tax exemption to a theater that was located on property owned by a city but leased to a for-profit entity. Accord Volusia County v. Daytona Beach Racing & Recreational Facilities Dist., 341 So.2d 498 (Fla.1976). Property owned by a governmental unit and leased to a proprietary entity must pay its fair share. As the court noted in Daytona Beach:
Other statutory provisions exempt privately held leaseholds of governmental property from taxation "only when the lessee," Section 196.199(2)(a), Florida Statutes (1975), "is demonstrated to perform a function or serve a governmental purpose which could properly be performed or served by an appropriate governmental unit, or., which would otherwise be a valid subject for the allocation of public funds." Section 196.012(5), Florida Statutes (1975). The lessee in the present case does not serve a governmental purpose. The Corporation's operation of the speedway "is purely proprietary and for profit." Williams v. Jones, 326 So.2d 425, 433 (Fla. 1975)(reh. den. 1976). The Corporation exists in order to make profits for its stockholders and uses the leasehold to further that purpose. This use is determinative: "It is the utilization of leased property from a governmental source that determines whether it is taxable under the Constitution." Straughn v. Camp,[5]supra, at 695.
Daytona Beach, 341 So.2d at 502. The same is true for the racetrack involved in this case. The operation of the Sebring International Raceway is a for-profit, proprietary activity despite the legislature's attempt to blur the distinctions between proprietary and municipal purposes.
We, therefore, affirm the trial court's ruling that the 1994 amendment to section 196.012(6), is unconstitutional.
PARKER, C.J., and CAMPBELL, J., concur.
NOTES
[1] Although summary judgment was granted to the department and the department argued the raceway was not entitled to an exemption from ad valorem taxation, the department is an appellant in this case because it maintains that the statute is constitutional and that the trial court did not have to address the constitutional issue.
[2] Other subsections of this constitutional provision give the legislature the power to exempt property under a business development provision, an energy provision and historic preservation provisions. None of these provisions are applicable to the facts of this case.
[3] We also agree with the trial court that the property involved in this litigation falls squarely within the quoted provisions of section 196.012(6), and this case cannot be resolved without determining the constitutionality of the statutory provision.
[4] The appellants leased property from the Santa Rosa Island Authority and operated such enterprises as barber shops, plumbing businesses, beauty shops, laundries, rental cottages, motels, restaurants and campgrounds.
[5] Straughn v. Camp, 293 So.2d 689 (Fla.1974).