783 So.2d 238 (2001)
The SEBRING AIRPORT AUTHORITY and Sebring International Raceway, Inc., Appellants,
v.
C. Raymond McINTYRE, Property Appraiser of Highlands County, Florida; and J.T. Landress, Tax Collector Of Highlands County, Florida, Appellees.
The Department of Revenue, Appellant,
v.
C. Raymond McIntyre, Property Appraiser of Highlands County, Florida; and J.T. Landress, Tax Collector of Highlands County, Florida, Appellees.
Nos. SC94118, SC94105.
Supreme Court of Florida.
April 5, 2001.
*240 Paul R. Pizzo, Hala A. Sandridge and Charles Tyler Cone of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, FL; and Robert A. Butterworth, Attorney General, and Joseph C. Mellichamp, III, Senior Assistant Attorney General, Tallahassee, FL, for Appellants.
Larry E. Levy, Tallahassee, FL, for Appellees.
Mark C. Extein and John R. Hamilton of Foley & Lardner, Orlando, FL, for Greater Orlando Aviation Authority, Amicus Curiae.
Steven L. Brannock of Holland & Knight, Tampa, FL, for The Florida League of Cities, Inc., the Cities of Lakeland, Orlando, St. Petersburg, and the Tampa Sports Authority, Amici Curiae.
Loren E. Levy, Tallahassee, FL, for Property Appraisers' Association of Florida, Inc., Amicus Curiae.
Robert A. Ginsburg, Miami-Dade County Attorney, and Thomas W. Logue and James K. Kracht, Assistant County Attorneys, Miami, FL, for Joel W. Robbins, The Dade County Property Appraiser, Amicus Curiae.
William D. Shepherd, Tampa, FL, for Rob Turner, Hillsborough County Property Appraiser, Amicus Curiae.
LEWIS, J.
We have on appeal the decision of the Second District Court of Appeal in Sebring Airport Authority v. McIntyre, 718 So.2d 296, 297 (Fla. 2d DCA 1998) ("Sebring III"), which declared a portion of section 196.012(6), Florida Statutes (Supp.1994), to be unconstitutional. The invalidated provision would have created an ad valorem tax exemption for situations where private enterprise leases governmental property to be utilized for profit-making endeavors such as convention and visitor centers, sports facilities, concert halls, arenas and stadiums, parks or beaches. The exemption for these ventures was to be accomplished by statutorily defining these types of activities as serving "a governmental, municipal, or public purpose or function." *241 We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
The primary premise advanced in support of the constitutional validity of this legislative scheme of exemptions is that these types of activities have traditionally been recognized to serve or be a "public purpose" in connection with bond validation proceedings, an approach which involves an analysis of the nexus between governmental financing and private profit making ventures pursuant to article VII, section 10 (pledging credit) of the Florida Constitution. A fundamental flaw in virtually all of the arguments submitted in support of the constitutionality of this legislation is that one cannot adopt and apply the phrase or concept of "public purpose" from decisions concerning issues other than ad valorem taxation exemptions in this ad valorem taxation context. The bond validation concept simply cannot be superimposed upon or commingled with the constitutional ad valorem taxation exemption analysis. For example, article VII, section 10, which is directly implicated in bond validation matters, itself undermines the theory advanced to support the validity of the exemption, in the provision related to the issuance and sale of certain revenue bonds which provides:
If any project so financed, or any part thereof, is occupied or operated by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property.
Art. VII, § 10(c), Fla. Const.
The 1994 amendment under consideration here attempts to create an ad valorem tax exemption for private, profit-making ventures conducted upon property leased from a governmental entitya result which the Florida Constitution does not allow. Therefore, we agree with the Second District to the extent that it held the 1994 amendment to be unconstitutional, and affirm the result below.
The broad question posed here is not new: we must address the source and the constitutionally derived limitations upon provisions establishing and creating exemptions from ad valorem taxation. The issue is not the popularity of such activities, nor the pleasure derived from such operations. We certainly understand, acknowledge and respect the legislative direction involved here, but we are compelled to review and address the issue from a specific constitutional perspective.
The activities of the appellantsthe Sebring Airport Authority and Sebring International Raceway (collectively, "Raceway")[1] have received prior scrutiny by this Court, and are conceded to be unchanged since our last review. As observed by the trial court, "[t]he factual uses of the subject property include the operation of a racetrack by the lessee for profit and attendant functions, such as food stands, drink stands, souvenirs, all of which are, per se, proprietary activities."
We first addressed Raceway's activities, as measured against the "public purpose" requirement for mandatory tax exemptions, in Sebring Airport Authority v. McIntyre, 642 So.2d 1072 (Fla.1994) ("Sebring II"). In that case, Raceway asserted that the subject property was being used to further a public purpose, and *242 it was therefore entitled to an exemption from ad valorem taxation under section 196.199(2)(a), Florida Statutes (1991). That section provided, in pertinent part, that "[p]roperty owned by the following governmental units but used by nongovernmental lessees shall only be exempt from taxation ... when the lessee serves or performs a governmental, municipal, or public purpose or function, as defined in s. 196.012(6)." Section 196.012(6), in turn, provided:
(6) Governmental, municipal, or public purpose or function shall be deemed to be served or performed when the lessee under any leasehold interest created in property of the United States, the state or any of its political subdivisions, or any municipality, agency, authority, or other public body corporate of the state is demonstrated to perform a function or serve a governmental purpose which could properly be performed or served by an appropriate governmental unit or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds.
The trial court denied the exemption, and entered summary judgment for the county. The district court affirmed. Sebring Airport Authority v. McIntyre, 623 So.2d 541 (Fla. 2d DCA 1993) ("Sebring I"). Asserting conflict with Page v. Fernandina Harbor Joint Venture, 608 So.2d 520 (Fla. 1st DCA 1992), Raceway then sought to have this Court review the denial of the exemption.
In asserting entitlement to an exemption, Raceway did not dispute its status as a for-profit corporation. Rather, Raceway argued that "a governmental lease to a nongovernmental lessee is exempt from ad valorem taxation if the lessee serves a public purpose, regardless of the for-profit motive." Sebring II, 642 So.2d at 1073. This Court disagreed:
A governmental-proprietary function occurs when a nongovernmental lessee utilizes governmental property for-proprietary and for-profit aims.[2] We have no doubt that Raceway's operation of the racetrack serves the public, but such service does not fit within the definition of a public purpose as defined by section 196.012(6). Raceway's operating of the race for profit is a governmental-proprietary function; therefore, a tax exemption is not allowed under section 196.199(2)(a).
Id. at 1074. In approving the Second District's decision denying Raceway an exemption, the Court "disapprove[d] Page v. Fernandina Harbor Joint Venture, 608 So.2d 520 (Fla. 1st DCA 1992), to the extent that it may be read to grant ad valorem tax exemption to a nongovernmental lessee of governmental property that uses such property for governmental-proprietary purposes." Id. at 1074.
Following the outcome in Sebring II, the Legislature amended section 196.012(6)("the 1994 amendment"). See ch. 94-353, § 59, at 2566, Laws of Fla. That amendmentwhich is the subject of this appealprovides, in pertinent part:
The use by a lessee, licensee, or management company of real property or a portion thereof as a convention center, visitor center, sports facility with permanent seating, concert hall, arena, stadium, park, or beach is deemed a use that serves a governmental, municipal, or public purpose or function when access *243 to the property is open to the general public with or without a charge for admission.
Once again, appellants sought a tax exemption for the subject property. This time, appellants cited the 1994 amendment to support their argument that they qualified for an exemption.
Based upon Raceway's "proprietary-governmental" activities, the trial court again determined that appellants were not entitled to a tax exemption. Relying on the "guiding principles" set forth in Williams v. Jones, 326 So.2d 425 (Fla.1975), and Volusia County v. Daytona Beach Racing & Recreational Facilities Dist., 341 So.2d 498 (Fla.1976), the court rejected Raceway's argument that the definition of "public purpose," as contained in the statutory amendment, was determinative.
Rather, the court observed that the principles established in Williams and Volusia County were "premised on a constitutional foundation that all privately used property must bear the proper tax burden." Applying what it thus perceived to be a constitutional limitation on the Legislature's ability to define "public purpose," the trial court declared the 1994 amendment to be "unconstitutional as an attempt to create an exemption not permitted in the Florida Constitution."
On appeal, the Second District affirmed. It agreed with the trial court "that the language quoted above is an impermissible attempt by the Legislature to create a tax exemption that is not authorized by the Florida Constitution." 718 So.2d at 297. Thus, the lower appellate court also held the 1994 amendment to be unconstitutional[3] "[t]o the extent that [it] attempts to exempt from taxation municipal property used for a proprietary purpose." Id. at 298.
The thrust of Raceway's argument here is that the Florida Constitution is a fluid document,[4] and the concepts contained therein should be responsive to changing times. Appellants contend that this Court should, in the context of a mandatory tax exemption analysis, defer to the Legislature in its determination of what constitutes a modern-day "public purpose." They argue that, unless the legislative definition is "patently erroneous" when measured against common usage, the Court should parallel its interpretation of the constitutional limitation contained in article VII, section 3(a), to comport with the *244 legislative definition. However, because it is the constitution[5] itself, rather than "common usage," which is the touchstone against which the Legislature's enactments are to be judicially measured, this somewhat circuitous argument is a classic example of the proverbial tail wagging the dog. Additionally, the current popularity of any particular endeavor is not the constitutional prism through which this issue must be seen. Issues concerning funding or the construction of entertainment facilities are not interchangeable with those involved in ad valorem taxation or exemptions.
This Court has consistently recognized that the judiciary has an obligation, pursuant to the separation of powers contained in article II, section 3 of the Florida Constitution,[6] to construe statutory pronouncements in strict accord with the legislative will,[7] so long as the statute does not violate organic principles of constitutional law. See In re Apportionment Law, Senate Joint Resolution No. 1305, 263 So.2d 797 (Fla.1972); City of Jacksonville v. Bowden, 67 Fla. 181, 64 So. 769 (1914). As we explained in Bowden:
Where a statute does not violate the federal or state Constitution, the legislative *245 will is supreme, and its policy is not subject to judicial review. The courts have no veto power, and do not assume to regulate state policy; but they recognize and enforce the policy of the law as expressed in valid enactments, and decline to enforce statutes only when to do so would violate organic law.
67 Fla. at 188, 64 So. at 772. Later, in In re Apportionment Law, while cognizant that "[t]he propriety and wisdom of legislation are exclusively matters for legislative determination," we also recognized that the Legislature's authority was not unbridled. Thus, we observed there that, although "this Court, in accordance with the doctrine of separation of powers, will not seek to substitute its judgment for that of another coordinate branch of the government," pursuant to that same constitutional doctrine, the Court is responsible for measuring legislative acts "with the yardstick of the Constitution." 263 So.2d at 806. The specific provisions against which the amendment in this case is to be measured are article VII, section 4, and article VII, section 3(a), of the Florida Constitution, and with recognition of some aspects of the provisions of article VII, section 10(c). Article VII, section 4, contains the overarching provision that "[b]y general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation." Article VII, section 3(a), sets forth the mandatory and permissive exemptions from this constitutional admonition regarding ad valorem taxation.[8] It provides:
All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation. A municipality, owning property outside the municipality, may be required by general law to make payment to the taxing unit in which the property is located. Such portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation.
Here, we are required to interpret the application of article VII, section 3(a), to private, for-profit uses of leased, governmental property having absolutely nothing whatsoever to do with educational, literary, scientific, religious, or charitable activities.
As this Court, in Volusia County, expressly recognized, the language presently contained in the first sentence of article VII, section 3(a), reflects a marked change from its counterpart in the 1885 Constitution:
The Constitution of 1885 provided that property owned by corporations "shall be subject to taxation unless ... used exclusively for religious, scientific, municipal, educational, literary or charitable purposes." Article 16, Section 16, Florida Constitution 1885. The phrase "municipal ... purposes" was broadly interpreted to include any "public" purpose; under the Constitution of 1885, this Court decided that simply holding a proprietary interest in "a community recreational asset and business stimulant," Daytona Beach Racing & Rec. Fac. Dist. v. Paul, 179 So.2d 349, 353 (Fla. 1965), like the speedway served a "municipal purpose." Id. Perceiving decisions of this kind as creating inequities in the tax structure, the draftsmen of the Constitution of 1968 limited the municipal purpose exemption to "property owned by a municipality and used exclusively by it for municipal or public purposes." *246 Article VII, Section 3(a), Florida Constitution 1968.
341 So.2d at 502. Pursuant to the adopted changes which resulted in the 1968 Constitution, the 1971 Legislature enacted a "sweeping reform" of chapters 192 and 196, Florida Statutes, see ch. 71-133, Laws of Fla. (commonly known as the "tax reform act"):
The legislature repealed all the statutory provisions, both general laws and special acts, relevant to leasehold taxation and exemption. In their place, the legislature substituted a provision stating that all leasehold interests in governmental property were taxable unless expressly exempted by law. The lawmakers provided an express exemption to leaseholds "only when the lessee serves or performs a governmental, municipal, or public purpose or function...." Governmental, municipal, or public purpose or function was defined as a use which is "demonstrated to perform a function or serve a governmental purpose which could properly be performed or served by an appropriate governmental unit, or which is demonstrated to perform a function or serve a purpose which would otherwise be a valid subject for the allocation of public funds."
Bonnie Roberts, Ad Valorem Taxation of Leasehold Interests in Governmentally Owned Property, 6 Fla. St. U.L.Rev. 1085, 1092 (1978). "When read together, the provisions of article VII, section 3(a) of the 1968 constitution and the 1971 statutory modifications[9] substantially tighten[ed] the requirements of an exemption." Id.
However, it was not until this Court's decisions in Williams and Volusia County that the substantial changes in article VII, section 3(a) of the 1968 Constitution were finally given effect. See also Straughn v. Camp, 293 So.2d 689, 696 (Fla.1974) (observing that "in instances where the predominant use of governmentally leased land is for private purposes the Constitution requires that the leasehold be taxed") (citing Hillsborough County Aviation Authority v. Walden, 210 So.2d 193 (Fla. 1968)).
In Williams, the Court first enunciated the current "governmental-governmental" standard for determining "public purpose" in the ad valorem tax exemption context. The Williams opinion reflected that this standard was constitutionally required:
The operation of the commercial establishments represented by Raceway's cases is purely proprietary and for profit. They are not governmental functions. If such a commercial establishment operated for profit on Panama City Beach, Miami Beach, Daytona Beach, or St. Petersburg Beach is not exempt from tax, then why should such an establishment operated for profit on Santa Rosa Island Beach be exempt? No rational basis exists for such a distinction. The exemptions contemplated under Sections 196.012(5) and 196.199(2)(a), Florida Statutes, relate to "governmental-governmental" functions as opposed to "governmental-proprietary" functions. With the exemption being so interpreted all property used by private persons and commercial enterprises is subjected to taxation either directly or indirectly through taxation on the leasehold. Thus all privately used property bears a tax burden in some manner and this is what the Constitution mandates.
326 So.2d at 433.
Williams heralded a "judicial abandonment of the broad exemption theory articulated *247 in Pan American." Roberts, supra, at 1096. As one commentator (writing in 1978) observed:
If one were to accept the statutory definitions of public purpose as the sole basis for the decision in Volusia County, one might conclude that some legislative tinkering with the appropriate statutes could once again render a profit-oriented lease tax-exempt. This conclusion, however, would be erroneous because of that seemingly innocuous statement in Straughn v. Camp that leasehold interests used for private purposes must be taxed by virtue of the 1968 constitution. Should the legislature attempt to amend the statutory definition of public purpose to include private uses for profit, the supreme court might strike the amendment as unconstitutional on the ground that the private use under the 1968 constitution must be subjected to ad valorem taxation.
Id. at 1098. Indeed, in Archer v. Marshall, 355 So.2d 781 (Fla.1978), the prediction of the commentator came to pass. In Marshall, the Legislature had enacted a special act, the primary effect of which was to require that all rentals due to the Santa Rosa Island Authority on leases dated on or before December 1, 1975, be reduced each year by the amount of ad valorem taxes for county and school purposes paid on the leasehold interests for the preceding year. This legislation reflected an attempt to undo, with respect to the Santa Rosa Island commercial and residential leaseholders, what had previously been done pursuant to the tax reform act. In the predecessor to Marshall, the Court, in Williams (relying on Straughn), had upheld the Legislature's prior decision (reflected in the tax reform act) to subject the leaseholds to ad valorem tax.
Thereafter, the Legislature, through a special act, purported to grant the leaseholders relief from ad valorem taxation. This Court, relying on Williams and Straughn, struck what it perceived to be "an indirect exemption from taxation on property not authorized by the state constitution." 355 So.2d at 783. In so doing, the Court stated:
The Legislature is without authority to grant an exemption from taxes where the exemption has no constitutional basis. Presbyterian Homes of the Synod of Florida v. Wood, 297 So.2d 556 (Fla. 1974). Regardless of the term used to describe the set-off, the reduction in rent afforded the leaseholders has the effect of a tax exemption and as such is unconstitutional since such exemption is not within the provisions of our present state constitution. Williams v. Jones, 326 So.2d 425 (Fla.1975); Straughn v. Camp, 293 So.2d 689 (Fla.1974). It is fundamentally unfair for the Legislature to statutorily manipulate assessment standards and criteria to favor certain taxpayers over others. Interlachen Lakes Estates, v. Snyder, 304 So.2d 433 (Fla.1974[1973]).
Accordingly, we hold that Chapter 76-361, Florida Statutes, Special Acts, 1976, violates Article VII, Section 3, Florida Constitution (1968), and is invalid.
Archer v. Marshall, 355 So.2d 781, 785 (Fla.1978).
Thus, it has long been clear that, based upon the amendments which resulted in the 1968 Constitution, the "public purpose" standard applicable in tax exemption cases is the "governmental-governmental" standard first established in Williams, later confirmed in Volusia County, and consistently applied in subsequent cases involving claimed tax exemptions for private leasehold interests. See Sebring II, 642 So.2d at 1074 (stating that the Court "disapprove[s] Page v. Fernandina Harbor Joint Venture, 608 So.2d 520 *248 (Fla. 1st DCA 1992) to the extent that it may be read to grant ad valorem tax exemption to a nongovernmental lessee of governmental property that uses such property for governmental-proprietary purposes"); Canaveral Port Authority v. Department of Revenue, 690 So.2d 1226, 1230 n. 11 (Fla.1996) (observing, in a tax exemption case, that, if the parties had disagreed regarding whether or not the uses of the subject property were governmental or nongovernmental, that determination should be made by the trial court "in accord with our decision in Sebring Airport Authority v. McIntyre, 642 So.2d 1072 (Fla.1994)") (citing Williams, 326 So.2d at 432-33). Pursuant to this "governmental-governmental" standard, article VII, section 3(a) does not permit municipal property leased to private entities for governmental-proprietary activities to be tax exempt; rather, article VII, section 4, requires property so used to be subject to ad valorem tax.[10]
Here, however, Raceway asks that a dramatically different standard be applied to determine whether its activities constitute a "public purpose" use of municipally owned property. In so doing, it places significant reliance on two bond validation[11] cases recently decided by this *249 Court, Poe v. Hillsborough County, 695 So.2d 672 (Fla.1997),[12] and State v. Osceola County, 752 So.2d 530 (Fla.1999).[13]
In Poe and Osceola County, the Court considered, respectively, whether a community stadium (leased upon lucrative termsfrom the lessee's perspectiveto a local football team) and a convention center (to be built and operated by the prospective lessee) served a "paramount public purpose." However, the "public purpose" (for non-recourse bonds) or "paramount public purpose" analysis (for recourse bonds) undertaken in a bond validation case implicates a provision of the Florida Constitution far different from that which governs in a tax exemption case.
In bond validation cases, the scope of this Court's review is limited to the following issues: "(1) whether the public body has the authority to issue bonds; (2) whether the purpose of the obligation is legal; and (3) whether the bond issuance complies with the requirements of the law." Osceola County, 752 So.2d at 533. It is the second prong of this analysis whether the purpose of the obligation is legalwhich implicates article VII, section 10 of the Florida Constitution. That section provides, in pertinent part:
Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing *250 power or credit to aid any corporation, association, partnership or person....
Therefore, it is the constitutional prohibition against lending "its taxing power or credit" to aid private entities which compels an analysis historically described as "public purpose" in bond validation cases. The Second District distinguished Raceway's reliance on the bond cases, stating:
The airport authority and the raceway argue that the supreme court's decision in Poe v. Hillsborough County, 695 So.2d 672 (Fla.1997), supports the argument that the legislature properly construed the term "governmental, municipal or public purpose or function." We disagree. The Poe case involves the court's determination of a proposed bond issue by Hillsborough County and the City of Tampa for a community stadium. The court was concerned with whether or not a particular clause in a stadium lease, which granted the local football team the first $2 million dollars in net revenues from nonfootball events, would change the purpose of the project. It was in this context that the court validated the proposed bond issue.
Sebring III, 718 So.2d at 299. See also Dade County v. Pan American World Airways, Inc., 275 So.2d 505, 515 (Fla. 1973) (Ervin, J., dissenting) ("It is also important to recognize that the concept of `public purpose' justifying the issuance of revenue bonds, does not in itself require exemption from taxation."); cf. Volusia County, 341 So.2d at 501 (observing that, under article VII, section 10(c), where a municipal project financed by revenue bonds "is occupied or operated by any private corporation ... pursuant to ... lease ... the property interest created by such ... lease shall be subject to taxation to the same extent as other privately owned property").
Bond validation cases such as Poe and Osceola County are not analogous to tax exemption cases, and the legal theories cannot be used interchangeably. They involve not only very different constitutional provisions, but also significantly different fiscal implications. In bond validation cases involving projects such as the stadium or the convention center, specifically targeted tourist development tax revenues (rather than ad valorem taxes) may have been used in acquiring or constructing the subject facilities. Further, the revenue stream generated by the project itself may be calculated to repay any bond indebtedness which a local government guarantees.
Thus, in bond validation cases, a shift in the ad valorem tax burden to other taxpayers is not anticipated. In tax exemption cases, in contrast, any newly-created tax exemption necessarily involves a direct shift in tax burden from the exempt property to other, non-exempt properties.[14]
It is perhaps both confusing and unfortunate, then, that the same term "public purpose"[15]has traditionally been *251 used in both of these analytical contexts.[16] At least in tax exemption cases, however, it has been clearly established that the "governmental-governmental" public purpose standard governs. The 1994 amendment simply does not comport with this standard or the constitutional requirements.
Additionally, Raceway's argument predicated upon bond validation cases falls far short of complete analysis and fails to accommodate other constitutional provisions. As previously noted, the Florida Constitution expressly contemplates that, even when it is determined in the bond validation context that a particular project is appropriate under the standards of article VII, section 10, when certain projects are occupied or operated privately pursuant to contract or lease, the property interest shall be subject to taxation to the same extent as other privately owned property. See art. VII, § 10(c).
Even the Senate Staff Analysis and Economic Impact Statement which accompanied the proposed 1994 amendment disclosed a candid awareness that the revision would be contrary to the current of established law. In fact, each of the cases cited in support of the amendment has since been either reversed or disapproved by this Court; all those cited as being inconsistent with the amendment have either been approved or affirmed.[17]
*252 Nonetheless, Raceway urges that the Legislature "used the normal and ordinary meaning of the constitutional term `public purposes' when it included in § 196.012(6) the types of for-profit-operated facilities which are recognized ... to promote the general welfare by stimulating tourism and economic development." The Second District determined otherwise, reasoning that "[t]he legislature's redefinition of the term in this instance must fail because the redefined term conflicts with the `normal and ordinary meaning' of the phrase `governmental, municipal or public purpose or function.'" Sebring III, 718 So.2d at 298.
Commentators have suggested that this 1994 amendment has attempted to convert the entire nature of permitted exemptions into that never envisioned by constitutional concepts. See David M. Hudson, Governmental Immunity and Taxation in Florida, 9 U. Fla. J.L. & Pub. Pol'y 221, 250 (1998). When viewed through the lens of the constitution, this amendment's approach cannot meet with success because mere labeling does not and cannot effectuate a transformation of constitutional acceptance. "[L]egislatively deeming a governmental-proprietary purpose to be a `governmental-governmental' purpose does not change its true nature and does not result in the constitutional awarding of a tax exemption where, absent the legislation, there clearly could be no exemption." Id.
*253 As we stated in Volusia County, 341 So.2d at 502, "Operating an automobile racetrack for profit is not even arguably the performance of a `governmental-governmental' function."[18] The time has not come to construe the Florida Constitution to provide otherwise.[19] We certainly understand that there is enormous competition to secure professional athletic teams and other forms of entertainment and economic development which benefit Florida citizens. We also recognize the tremendous economic forces and implications that become involved in this type of issue and the good faith legislative attempts to balance these concerns. However, as long as the people of Florida maintain the constitution in the form we are required to apply today, neither we nor the Legislature may expand the permissible exemptions based on this type of argument. The people of Florida have spoken in the organic law and we honor that voice. It is not for this Court or the Legislature to grant ad valorem taxation exemptions not provided for in the present constitutional provisions. That decision rests solely with the people of Florida as voiced in our constitution, and not through legislation. Based upon this analysis and reasoning, we affirm the decision below and approve the Second District's opinion only to the extent it is consistent with this opinion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING and ANSTEAD, JJ., concur.
QUINCE, J., recused.
NOTES
[1] The Department of Revenue, which is also an appellant here, agrees with the appellees that the subject property should not be exempt from ad valorem taxation. However, it maintains that the trial court should have construed the 1994 amendment to exclude Raceway's activities, thus avoiding the constitutional question.
[2] In a footnote, this Court explained that "[p]roprietary functions promote the comfort, convenience, safety and happiness of citizens, whereas government functions concern the administration of some phase of government," citing Black's Law Dictionary 1219 (6th ed.1990). Sebring II, 642 So.2d at 1074 n. 1.
[3] The Second District agreed "with the trial court that the property involved in this litigation falls squarely within the quoted provisions of section 196.012(6), and this case cannot be resolved without determining the constitutionality of the statutory provision." 718 So.2d at 298 n. 3.
[4] Chief Justice Marshall's renowned words regarding the enduringand, therefore, flexible nature of the United States Constitution have analogous application here. See M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819). Chief Justice Stone, speaking for the United States Supreme Court on the death of Mr. Justice Brandeis, observed:

He never lost sight of the fact that the Constitution is primarily a great charter of government, and often repeated Marshall's words: "it is a constitution we are expounding" "intended to endure for ages to come, and, consequently, to be adapted to the various crises of human affairs." Hence, its provisions were to be read not with the narrow literalism of a municipal code or a penal statute, but so that its high purposes should illumine every sentence and phrase of the document and be given effect as part of a harmonious framework of government.
Proceedings in Memory of Mr. Justice Brandeis, Remarks of Chief Justice Stone, 317 U.S. IX, XLVII (1942).
[5] As stated by this Court in a different context (involving the court's refusal to "control the action of the Governor in respect to a political duty of his office"):

Neither department ... can control the other in the exercise of its legitimate functions. To the judges belongs the power of expounding the laws; and although in the discharge of that duty they may render a law inoperative by declaring it unconstitutional, it does not arise from any supremacy which the judiciary possesses over the Legislature, BUT FROM THE SUPREMACY OF THE CONSTITUTION OVER BOTH."
State ex rel. Bisbee v. Drew, 17 Fla. 67, 84 (1879) (quoting Greir v. Taylor, 15 S.C.L. (4 McCord) 206, 210 (S.C.1827)).
[6] That section provides:

SECTION 3. Branches of government. The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
[7] Particular deference is given to special, as opposed to general, taxing laws, such as enactments creating special taxing districts, where "the formation of the district has at least some special or peculiar relation to benefits or advantages to accrue either directly or indirectly from the particular improvement or facility." Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 So. 280, 281 (1924); see also Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449, 465 (1928) (observing that, "[i]n the absence of a flagrant abuse of legislative power or of purely arbitrary legislative action, which invades organic property rights, the state may by statute establish drainage district and tax lands therein for local improvements; and none of such lands may escape appropriate taxation for the local improvement solely because they will not receive direct or exactly equal benefits, where no arbitrary and oppressive action is clearly and fully shown"). As stated by the Tyler Court:

The Constitution contains no provision for the creation of bridge or other districts within a county for local public improvements or facilities, to be paid for by taxation upon property within the particular district; yet, the Constitution not forbidding, it is within the law-making power of the Legislature by a duly enacted statute to establish within a county a district, and to impose particular taxes upon property within the district to pay for a public local improvement or facility, when the formation of the district has at least some special or peculiar relation to benefits or advantages to accrue either directly or indirectly from the particular improvement or facility, and the property within the district is taxed with some substantial relation to benefits or advantages that reasonably may result to the property or to the owners thereof from the improvement of facility contemplated; and, when duly called upon to protect private rights from alleged unlawful invasion by taxes imposed in the district, the courts, without failing to fully perform the judicial functions, will accord a wide latitude in the premises to the legislative discretion.
Id. (citations omitted).
[8] "Immunity and exemption differ in that immunity connotes an absence of the power to tax while exemption presupposes the existence of that power." Canaveral Port Authority v. Department of Revenue, 690 So.2d 1226, 1234 n. 7 (Fla.1996).
[9] These statutory provisions are still included in sections 196.199 and 196.012(6), Florida Statutes (1997).
[10] In Williams, in upholding legislation imposing ad valorem tax on the Santa Rosa Island leaseholds, the Courtalluding to the language contained in article VII, section 4 observed that, in being subjected to the tax, the leaseholders paid their fair share of fire, police, and education services provided by the county in which they were situated:

The result obtained through application of Sections 196.001(2) and 196.199, Florida Statutes, is to require that the leasehold interests defined therein shall be taxed at a just valuation like "all other property" in the state. To accept the appellants' contention that the Legislature is without power to so classify such leasehold interests as real property would not only result in such leasehold interests being taxed on the reduced intangible personal property ad valorem rate but would also deprive the political subdivisions wherein the leaseholds are situated from raising revenues from such sources in order to defray the costs of the services supplied to the users thereof, services which include, especially, the education of the children of such users. The holder of a lease on Santa Rosa Island requires no less police protection, fire protection or education of his or her children than does his or her neighbor in the county who occupies under a fee simple title. But if appellants' argument is accepted the revenues derived from the tax of a leasehold as intangible personal property must constitutionally be paid into the coffers of the state rather than the local political subdivision. See Article VII, Sections 1 and 9. The Legislature clearly has the power to classify so that all property devoted to private use is treated on a parity and, therefore, there is an equitable distribution of the tax burden. Basically, the appellants contend for a constitutional exemption from ad valorem real estate taxation where none exists and, if it did, such an exemption would undoubtedly be discriminatory and violative of the equal protection provisions of the Florida and United States Constitutions.
Williams, 326 So.2d at 431-32.
[11] In this bond validation context, the Court cited Daytona Beach Racing & Recreational Facilities Dist. v. Paul, 179 So.2d 349 (Fla. 1965), inter alia, with approval. On this basis, Raceway also cites Paulwhich had, prior to adoption of the 1968 Florida Constitution, utilized a broad public purpose standard in support of its argument that the Court should, in interpreting the constitutional "public purpose limitation" on tax exemptions, adopt the legislative construction of "public purpose." However, based upon the 1968 constitution, in the tax exemption context, the expansive principles espoused in Paul have long been held inapplicable. See Walden v. Hillsborough County Aviation Authority, 375 So.2d 283, 287 (Fla.1979) (stating that respondents' reliance on Paul was misplaced "in light of our decision in Volusia County v. Daytona Beach Racing and Recreational Facilities District, wherein we expressly overruled Daytona Beach Racing and Recreational Facilities District v. Paul").
[12] In Poe, the Court referenced both the bond validation case and the tax exemption case involving the Daytona Beach Motor Speedway:

The validity of the bonds for the Daytona Beach Motor Speedway came before this Court again, after the facility was constructed and had been operating for several years, in the context of a suit by the county tax collector and others against the special district and the City of Daytona Beach for the collection of taxes on the property leased to the special district and then subleased to the corporation. Daytona Beach Racing & Recreational Facilities Dist. v. Paul, 179 So.2d 349 (Fla.1965). In this second case, we found that a change in the lease agreement favorable to the corporation, which in essence gave the corporation exclusive use of the raceway all year, did not detract from our previous finding that the bonds were for a predominantly public purpose so as to cause a loss of the special district's tax exemption.... Like the bonds in the Daytona Beach Racing and Recreational Facilities cases, the bonds at issue in this case are valid for similar reasons, and the trial court erred in ruling otherwise.
695 So.2d at 678.
[13] In Osceola County, this Court stated:

As we did in Poe and Daytona Beach Racing & Recreational Facilities Dist., we find the convention center in this case serves a paramount public purpose. As the trial court found, the convention center would, among other things, promote gainful employment, promote outside business interests and tourism, and provide a forum for educational, recreational and entertainment activities. Such interests have been found to serve a public purpose. See City of Miami, 379 So.2d at 653 (recognizing that interests such as providing forum for educational, civic, and community activities and increasing tourism and international trade serve public purpose). The fact that the proposed project will be operated by a private entity does not negate the public character of the project. See Osceola County Indus. Dev. Authority, 424 So.2d at 742; Daytona Beach Racing & Recreational Facilities Dist. v. Paul, 179 So.2d 349, 354 (Fla.1965); see generally State v. Orange County Indus. Dev. Authority, 417 So.2d 959, 962-63 (Fla.1982) (holding that revenue bonds issued for construction and operation of hotel by private corporation constituted paramount public purpose where hotel was integral part of convention center). Accordingly, we find the State has not met its burden by showing that the convention center fails to serve a paramount public purpose.
752 So.2d at 539.
[14] The Senate Staff Analysis and Economic Impact Statement accompanying the 1994 amendment acknowledged this significant shift in tax burden:

V. ECONOMIC IMPACT AND FISCAL NOTE:
A. Tax/Fee Issues:
While it cannot be accurately estimated at this time how much local governments' property tax base would be reduced by this broadened exemption, it is anticipated to be significant. Consequently, the resulting shift in the property tax burden to other taxpayers will be significant.
Fla. S. Comm. on Fin., Tax'n & Claims, CS for SBs 162 & 1558 (1994) Staff Analysis 5 (Mar. 17, 1994).
[15] The "public purpose" analysis is constitutionally derived in the tax exemption context; however, as applied to the bond validation context, in contrast, the phrase "public purpose" does not appear in the governing constitutional provision. Compare art. VII, § 3(a), Fla. Const. (providing that "[a]ll property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation") (emphasis supplied), with art. VII, § 10, Fla. Const. (providing that no municipality "shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person").
[16] This "confusion" is also evident in other areassuch as eminent domainwhere judicial scrutiny of a claimed "public purpose" is also required. Cf. Department of Transp. v. Fortune Fed. Sav. & Loan Ass'n, 532 So.2d 1267, 1270 (Fla.1988) (characterizing as "gratis dictum" language in Baycol, Inc. v. Downtown Dev. Authority, 315 So.2d 451 (Fla.1975) "to the effect that public purpose is virtually synonymous with public use"); Deseret Ranches of Florida, Inc. v. Bowman, 349 So.2d 155, 157 (Fla.1977) (Sundberg, J., dissenting) (observing that "`public benefit' is not synonymous with `public purpose'"); White v. Pinellas County, 185 So.2d 468, 470 (Fla.1966)(stating that "a `public purpose' or `public use' ... in this case, as in many others... are synonymous"); Grubstein v. Urban Renewal Agency, 115 So.2d 745, 751(Fla.1959) (observing that "[t]his court is committed to the rule that `public benefit' is not synonymous with `public purpose', when it comes to spending the taxpayers' money or taking his property by eminent domain"). See also Sebring II, 642 So.2d at 1073-74 (observing that "[s]erving the public and a public purpose, although easily confused, are not necessarily analogous").
[17] The statement provides, in pertinent part [bracketed language added to reflect the subsequent procedural history of the cases cited]:

IV. CONSTITUTIONAL ISSUES:
A. Municipality/County Mandates Restrictions:
If enacted into law, this expansion of the definition of "public purpose" will result in reducing many cities' and counties' property tax base. It is expected that the fiscal impact will be significant.
. . . .
D. Other Constitutional Issues:
Described below are some of the more important cases in which the courts have addressed the definition of "public purpose" in the context of government property used by non-governmental issues:
In 1975, the Fourth District Court of Appeals of Florida, in Maccabee Investments, Inc. v. Markham, 311 So.2d 718, 722 (Fla. Dist.Ct.App.1975)[, rev'd, 343 So.2d 16 (Fla. 1977)] noted that "... there is no precise rule or standard by which to determine whether the project, facility or activity is serving a municipal or public purpose within the meaning of the constitutional provision. Not only is there an absence of precise criteria but, in addition, the courts have stated that this determination "is not static."
Since then, the courts have generally relied on the statutory definition of public purpose as identified in Williams v. Jones, 326 So.2d 425 (Fla.1975), a case addressing leasehold interests in Santa Rosa Island. The court found that the "exemptions contemplated under s. 196.012(5) and s. 196.199(2)(a), Florida Statutes, relate to `governmental-governmental' functions as opposed to `governmental-proprietary' functions. Thus, "all property used by private persons and commercial enterprises is subjected to taxation either directly or indirectly through taxation on the leasehold."
However, a recent court ruling suggests that the court's definition of public purpose may be in flux. In 1992, the First District Court of Appeals ruled in Page v. Fernandina Harbor Joint Venture, 608 So.2d 520 (Fla.Dist.Ct.App.1992)[, disapproved, Sebring Airport Authority v. McIntyre, 642 So.2d 1072, 1074 (Fla.1994) ("We disapprove Page v. Fernandina Harbor Joint Venture, 608 So.2d 520 (Fla. 1st DCA 1992), to the extent that it may be read to grant ad valorem tax exemption to a nongovernmental lessee of governmental property that uses such property for governmental-proprietary purposes.")] that a municipal marina leased to a private entity was exempt from taxation because it was used for a valid public purpose. They reasoned that because the actual use of the property had not changed since leasing the property to the private company, its exemption should not be denied. Likewise, the Twelfth Circuit Court in Sarasota County found that municipal property leased as a commercial marina was exempt because it served a governmental function. Mikos v. City of Sarasota, No. 912879-CA-01 (Fl.Cir.Ct. Nov. 16, 1992)[, rev'd, Mikos v. City of Sarasota, 636 So.2d 83 (Fla. 2d DCA 1994)].
On the other hand, the same court ruled that the property appraiser was correct in assessing taxes against the City of Sarasota as owners of the Ed Smith Sports Complex. Mikos v. City of Sarasota, No. 91-3877-C01 (Fl.Cir.Ct. Nov. 5, 1992) (appeal pending on determination of jurisdiction)[, aff'd, City of Sarasota v. Mikos, 633 So.2d 1075 (Fla. 2d DCA 1993) (table report of unpublished opinion), approved, City of Sarasota v. Mikos, 645 So.2d 417 (Fla.1994)]. The court found that the use of the complex "by the Chicago White Sox and their farm team affiliate ... for training exhibition games is purely proprietary and for profit." The District Court affirmed the lower court's ruling. The marina case is pending appeal. In another recent ruling, the Second District Court of Appeals found that the Sebring International Speedway did not qualify for a public purpose exemption because it did not perform a governmental function. Sebring Airport Authority and Sebring International Raceway, Inc. v. McIntyre, [623 So.2d 541 (Fla. 2d DCA 1993), aff'd, 642 So.2d 1072 (Fla.1994)].
Staff Analysis, supra note 14, at 3-5.
[18] As stated by the Second District, "[t]he operation of the Sebring International Raceway is a for-profit, proprietary activity despite the legislature's attempt to blur the distinctions between proprietary and municipal purposes." 718 So.2d at 300.
[19] We add, parenthetically, however, that the time may be ripe to adopt a new phraseology for use in bond validation casessuch as "in the public interest" and "in the paramount public interest"to avoid confusion between an article VII, section 10 analysis in bond validation cases, and an article VII, section 3(a) analysis in tax exemption cases.