279 So.2d 832 (1973)
STATE of Florida, Plaintiff,
v.
Scott CAMIL, Defendant.
No. 42785.
Supreme Court of Florida.
June 20, 1973.
Robert L. Shevin, Atty. Gen., and Andrew W. Lindsey, Asst. Atty. Gen., for plaintiff.
Larry G. Turner, of Goldin & Turner, Gainesville, for defendant.
*833 ERVIN, Justice.
We here consider, after oral argument and consideration of briefs, a certified question of law (F.A.R. 4.6), 32 F.S.A. from the Felony Court of Record of Alachua County, reading as follows:
"Can the Florida Legislature through the General Reenactment Statute, Florida Statute 11.2421, constitutionally modify Florida Statute 404.01(3) so as to include those drugs added to the Drug Abuse Laws of the United States between the date of the initial enactment of Florida Statute 404.01(3) in July 1967 and the effective date of Florida Statute 11.2421 of 24 June 1971?"
Scott Camil is charged in two separate two-count informations with violating F.S. Section 404.02, F.S.A., on January 9 and 13, 1972, when he was allegedly in possession of, and delivered, a hallucinogenic drug, to-wit: Phenycylidine Hydrochloride, a/k/a "PCP." Upon arraignment Camil entered a plea of not guilty to each count of each information. Camil then filed a motion to dismiss. The trial court heard arguments and certified the question of law.
PCP is not specifically listed in F.S. Section 404.01, F.S.A., but is brought under the statute, if at all, by the language of F.S. Section 404.01(3), F.S.A.: "and any other drug to which the drug abuse laws of the United States apply." This language was added by the Legislature to Section 404.01(3) in July, 1967. At that time PCP was not a prohibited drug under the United States law.
PCP was added to the drug abuse laws of the United States by Congress on October 27, 1970.
Section 404.01(3), F.S., originally enacted as Section 2, Chapter 67-136, reads as follows:
"(3) The words `hallucinogenic drug' mean `cannabis' as defined in subsection (12), `lysergic acid' and `lysergic acid amide', `LSD' (lysergic acide diethylamide), `DMT' (dimethyltryptamine), `peyote', `mescaline', `psilocyn', `psilocybin', including their salts and derivatives, or any compounds, mixtures and every substance neither chemically nor physically distinguishable from them, and any and all derivatives of same and any other drug to which the drug abuse laws of the United States apply, and rivea corymbosa (ololiuqui) when used as a hallucinogen."
F.S. Section 11.2421, F.S.A. (Section 1, Chapter 71-251, in adopting the 1971 Florida Statutes employed the following language:
"11.2421 Florida Statutes, 1971 adopted
"The accompanying revision, consolidation and compilation of the public statutes of 1969 of a general and permanent nature, excepting tables, rules, indexes and other related matter contained therein, prepared by the statutory revision service of the legislative service bureau under the provisions of § 11.242, together with corrections, changes and amendments to and repeals of provisions of Florida Statutes, 1969, enacted in additional reviser's bill or bills by the 1971 legislature, is adopted and enacted as the official statute law if the state under the title of `Florida Statutes, 1971,' and shall take effect immediately upon publication. Said statutes may be cited as `Florida Statutes, 1971,' `Florida Statutes,' or `F.S. '71.'" (Emphasis supplied.)
Reference is made to the pertinent cases Freimuth v. State, Fla. 1972, 272 So.2d 473, and State v. Hoagland, Fla. 1973, 272 So.2d 478. In Freimuth we held that because "STP" was not listed in the federal registry as an illegal drug until October 3, 1968, one year after the passage of Section 404.01(3), it could not be considered illegal under the provision: "and any other drug to which the drug abuse laws of the United States apply." Accord Hoagland.
The State argues that while the Legislature cannot by reference incorporate into a *834 new statute future enactments of the Congress and the legislatures of other states or future regulations of administrative bodies of the United States, such an infirmity is cured from time to time as to such enactments and regulations then in existence by the general reenactment of prior general statutes in a biennial revision.
We believe that it would be improper to arbitrarily permit a substantive inclusion by reference into the reach of a Florida statute of a particular item embraced in a subsequently enacted or adopted federal law or federal administrative rule, whether it involved a specific drug, article in trade, a new federal regulation, or provision of law or other conceivable thing or subject merely by virtue of the adoption of the biennial revision of prior general laws which includes the pertinent original Florida law.
The adoption of the biennial revision (referred to as the Florida Statutes) serves a salutary purpose in compiling, cataloging, and bringing up to date in one set of law books the general laws of the state. But substantive changes incorporating by reference laws of the Congress or those of the legislatures of other states lack requisite initial title notice in the biennial revision required by the Florida Constitution and the opportunity for interested members of the public to seek their rejection during the mechanics of passage of bills in the Florida Legislature. It is reasonable that a new statute may be enacted by the Legislature incorporating by reference an existing Act of Congress, but it is contrary to the Constitution that a biennial revision of the statutes lacking title notice, etc., of the particular subject or thing to be incorporated have similar effect.
The certified question is answered accordingly.
CARLTON, C.J., and ROBERTS and ADKINS, JJ., concur.
BOYD, J., dissents with opinion.
BOYD, Justice (dissenting):
I must dissent.
There is a presumption that before each reenactment of the Florida Statutes, the Legislature examines the list of drugs prohibited on the Federal roster and prohibited by Federal law. There is no showing here that it failed to do so.
If the Legislature could prohibit certain drugs prohibited by the Federal government at any time in the past, it can continue the procedure by reenacting the prohibition whenever it desires to do so by following constitutional guidelines.
I dissent.