297 So.2d 556 (1974)
PRESBYTERIAN HOMES OF the SYNOD OF FLORIDA, a Florida Corporation Not for Profit, Appellant,
v.
Earl K. WOOD, As Tax Collector of Orange County, Florida, et al., Appellees.
J. Ed STRAUGHN, Executive Director, Department of Revenue of the State of Florida, Appellant,
v.
PRESBYTERIAN HOMES OF the SYNOD OF FLORIDA, a Florida Corporation Not for Profit, and Earl K. Wood, As Tax Collector, Etc., et al., Appellees.
Nos. 44718, 44775.
Supreme Court of Florida.
June 12, 1974.
Rehearing Denied August 9, 1974.
*557 Thomas T. Cobb and W.M. Chanfrau of Cobb, Cole, Sigerson, McCoy, Bell and Bond, Daytona Beach, for Presbyterian Homes of the Synod of Florida, appellant-appellee.
Robert L. Shevin, Atty. Gen., and Baya Harrison, III, Deputy Atty. Gen., for J. Ed Straughn, appellee-appellant.
ERVIN, Justice.
The question submitted in these consolidated appeals is whether F.S. Section 196.197(1), (2), (3), 1971 F.S.A., prescribing criteria, primarily "income test," for determining ad valorem tax exemption for homes for the aged is constitutional and conforms to the limitation or exemption provision of Section 3(a), Article VII, State Constitution, F.S.A., that reads as follows:
"Such portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation." (Emphasis supplied.)
The Circuit Court upheld the constitutionality of the statute and applied it to grant Presbyterian Homes of the Synod of Florida a tax exemption for the year 1972 of 36.6 per cent of the ad valorem tax on its home for the aged in Winter Park, Florida. We find F.S. Section 196.197(1), (2), (3), F.S.A., to be unconstitutional and reverse.
Summarized, F.S. Section 196.197(1), (2), (3), F.S.A., in essential part provides homes for the aged shall be exempt only if residency is restricted to (a) persons 62 years of age or older having a gross income of not more than $5000 per year; (b) couples, one of whom is 62 or older, who have a combined income of not more than $6000 per year; (c) persons totally and permanently disabled having gross incomes of not more than $5000 per year, and (d) disabled couples with combined incomes of not more than $6000 per year. According to the statute, such income limitations are to be adjusted to conform to *558 any increase in maximum income restrictions established by the U.S. Department of Housing and Urban Development for housing facilities for the lower income elderly financed under Section 202 or Section 236 of the National Housing Act, or of corresponding sections of any subsequently enacted National Housing Act.
It is our view that F.S. Section 196.197(1), (2), (3), F.S.A. is unconstitutional because its criteria fails on its face to conform to the quoted portion of Section 3, Article VII, State Constitution.
The "income test" prescribed in the statute is too narrow in scope to conform to the true intent of the constitutional limitation. General laws providing tax exemptions must contain criteria which correspond to the constitutional limitation that portions of property predominantly used for religious or charitable purposes may be exempted from taxes. The "income test" has reference more to the personal economics of a resident or residents of an apartment or room in a home for the aged or disabled than to the overall purpose or use of a home as a religious or charitable institution. It is restrictive in that it is applied pecuniarily and selectively to particular individuals and their apartments or rooms rather than to the general objects of a home provided by church or charitably oriented organizations for their eleemosynary programs.
Inasmuch as an "income test" is the primary determinant of the eligibility for tax exemption of a home, other factors traditionally used in determining the status of such a home are minimized contrary to the intent of the constitutional limitation. Ordinarily the traditional criteria for determining the tax exemption eligibility of charitable or religious organization home institutions are those spelled out in Orange County v. Orlando Osteopathic Hospital (Fla. 1953), 66 So.2d 285; Miami Battlecreek v. Lummus, 140 Fla. 718, 192 So. 211, 218; Lutheran Hospital Ass'n. v. Baker, 40 S.D. 226, 167 N.W. 148; Board of Commissioners of Tulsa County v. Sisters of the Sorrowful Mother, 141 Okla. 32, 283 P. 984; anno. 34 A.L.R. at 637, 62 A.L.R. at 330, and 108 A.L.R. 286, Simpson, Tax Collector v. Jones Business College (Fla. 1960), 118 So.2d 779; Jasper v. Mease Manor, Inc. (Fla. 1968), 208 So.2d 821, and Johnson v. Presbyterian Homes of Synod of Fla., Inc. (Fla. 1960), 239 So.2d 256. See also dissents in Presbyterian Homes v. City of Bradenton (Fla. 1966), 190 So.2d 771, text 773, et seq.
Specifically the constitutional limitation in Section 3(a), Article VII, above-quoted was proposed by the Legislature in 1968 in Special Session in June-July of that year and ratified by the electorate in November, 1968. It is reasonable to believe that this limitation was proposed in the light of this Court's holding in Jasper v. Mease Manor, Inc. (Fla. 1968), 208 So.2d 821. There the constitutional provisions in the 1885 Florida Constitution and existing statutes relating to tax exemptions for religious and charitable purposes were interpreted. The 1885 constitutional provisions provided tax exemption would not be allowed unless the property was "held and used exclusively" for religious or charitable purposes. The Revised 1968 Constitution only requires that property which is used predominantly for religious or charitable purposes may be exempted by general law from taxation.
In Jasper v. Mease Manor, Inc., it appears the statute then in existence relating to tax exemption for homes for the aged only required that the property be (1) used as a licensed home for persons who are at least 62 or whose resident spouse meets that requirement, (2) ownership and operation of a Florida nonprofit corporation for purposes and uses essential to operation of such home, and (3) that any profit above expenses and payment of property encumbrances shall be used for the benefit of guests or expanded facilities and not for other private enrichment. This act was upheld even under the more restrictive language *559 of the 1885 Constitution. The conclusions we draw from the foregoing history and interpretations are that the present words, "predominantly used," in the 1968 Florida Constitution exclude an interpretation which restricts the criteria to an "income test" of the residents to be benefitted by residence in the home.
To further aggravate and extend the inappositeness of the "income test" as the criterion for satisfying the predominate use limitation of Section 3, Article VII, a paragraph of F.S. Section 196.197(1), (2), (3), F.S.A., provides for a "sliding scale" to increase the maximum amounts of income prescribed for eligibility for tax exemption in paragraphs (a), (b), (c) and (d) of subsection (2) depending upon future acts of Congress or future Federal agency rulings of the U.S. Department of Housing and Urban Development. This "sliding scale" depending upon future Federal action is contrary to this Court's holdings in Freimuth v. State (Fla. 1972), 272 So.2d 473 and State v. Camil (Fla. 1873), 279 So.2d 832, to the effect a state statute cannot adopt in advance a future and unknown Federal Act or regulation.
Section 196.197(1), (2), (3) providing for an "income test" as the criterion for tax exemption of homes for the aged raises serious questions of equal protection. As was pointed out in the dissents in Presbyterian Homes v. City of Bradenton, supra, and recognized in Jasper v. Mease Manor, supra, age is a status in itself that presents a basis for classification for special treatment tax exemption legislation. Religious or church or charitable concern for the aged is not to be measured solely by individual pecuniary or income criteria although they play a part. Age has its drawbacks and hardships which require special care and attention that are aggravated by indigency. Homes for the aged are a modern charitable and religious response to those problems. But most importantly and taking into account the fact the Section 3(a), Article VII limitation has reference only to "predominate use," a strong case can be made that it is unequal treatment for the Legislature to allow tax exemptions for sorority or fraternity houses, schools, churches, nursing homes, hospitals, fraternal organizations, veterans' groups, Boy and Girl Scouts, and a host more when none has coupled with it an appreciable indigency or pecuniary status restriction as is prescribed in Section 196.197(1), (2), (3) as a condition precedent to allowance of tax exemption for the charitable or religious housing and care of the aged. See again dissents in Presbyterian Homes v. City of Bradenton, supra.
It is our view that F.S. Section 196.197(1), (2), (3), F.S.A., being unconstitutional can be excised from Chapter 196 as a necessary constitutional deletion in order that violence will not be visited upon the essential purpose of Chapter 196 to grant tax exemptions for homes for the aged. An unconstitutional portion of a general law may be deleted and the remainder allowed to stand if the unconstitutional provision can be logically separated from the remaining valid provisions, that is, if the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; and the good and bad features are not inseparable and the Legislature would have passed one without the other; and an act complete in itself remains after the invalid provisions are stricken. Cramp v. Board of Public Instruction of Orange County (Fla. 1962), 137 So.2d 828.
It is quite apparent that the Legislature in Chapter 196 as its main purpose intended to continue tax exemption for charitable or religious homes, facilities, or institutions for the aged. It mistakenly exceeded the limitation concerning tax exemption therefor in Section 3(a), Article VII by providing the "income test." However, in Chapter 196 it prescribed valid specifics for exemption in keeping with the constitutional limitation of predominate use which separately and independently stand apart from *560 the too restrictive "income test" provisions of the Act. In F.S. Section 196.012(1), F.S.A. 1971 definitions, the general nature of "`exempt use of property'" is declared to mean "predominant or exclusive use of property for ... religious, charitable ... use, as defined in this chapter." Subsection (3) of Section 196.012 states:
"`Predominant use of property' means property used for exempt purposes in excess of fifty percent (50%) but less than exclusive"
Subsection (6) of the same section states:
"`Charitable purpose' means a function or service which is of such a community service that its discontinuance could result in the allocation of public funds for the continuance of the function or service."
Subsection (8) of the same section states:
"`... homes for the aged' means institutions which possess a valid license under chapter 400, Florida Statutes, on January 1 of the year for which exemption from ad valorem taxation is requested."
F.S. Section 196.196, F.S.A., sets forth the general criteria for determining that portion of charitable or religious property which is entitled to exemption.
Without F.S. Section 196.197(1), (2), (3), F.S.A., the language of the chapter set forth above would appear to be ample criteria to be used in determining the tax exemption of a religious or charitable home for the aged pursuant to Section 3(a), Article VII, State Constitution, when coupled with the interpretation in Jasper v. Mease Manor, supra. Logically it appears the rationale in Jasper v. Mease Manor is controlling in regard to tax exemption of religious and charitable homes for the aged, upon the excision of F.S. Section 196.197(1), (2), (3), F.S.A.
The foregoing considered, we reverse the judgment of the Circuit Court for Orange County, Florida, upholding Florida Statute 196.197(1), (2), (3), F.S.A., as well as that Court's application thereof that only 36.6 per cent of the property in issue was predominantly used for charitable purposes and that the plaintiff appellant, Presbyterian Homes of the Synod of Florida, is only entitled to an exemption thereon of 117/332 (36.6 per cent) of its taxes for the tax year 1972.
The tests to be applied by taxing authorities and by the courts, if resort is had thereto, in determining whether to allow tax exemption for a home for the aged or disabled after deletion of F.S. Section 196.197(1), (2), (3), F.S.A., are found in the remainder of Chapter 196 and particularly the definitions in F.S. Section 196.012, F.S.A. and the criteria in Section 196.196 in keeping with Section 3(a), Article VII, State Constitution, and the rationale of the cases cited hereinbefore. Particular attention should be given to the holding in Jasper v. Mease Manor and the dissents in Presbyterian Homes v. City of Bradenton. The dissents in the latter case were given a large degree of viability in the later Jasper v. Mease Manor case. If it appears by applying the described tests that a property under investigation is used for exempt purposes in excess of 50 per cent the exemption should be allowed.
Only subsections (1), (2) and (3) of F.S. Section 196.197, F.S.A., are held unconstitutional by us. The remainder of the section is not attacked in this litigation.
It is directed that the cause be remanded and that further proceedings below be in accord herewith.
ADKINS, C.J., and ROBERTS, BOYD and McCAIN, JJ., concur.