LETTS, Judge.
This is an appeal by the property appraiser from a trial judge’s ruling declaring a Roman Catholic nursing home exempt from ad valorem taxes. We affirm.
The nursing home in question is operated under the Internal Revenue Code as a section 501(c)(3) nonprofit, charitable corporation by the Archdiocese of Miami, and is the only not-for-profit nursing home in all of Broward County. Its population is made up of one-third medicare patients, one-third medicaid patients and one-third private paying patients. As a result, the appraiser argues that the nursing home is not entitled to a complete exemption, but *941 only to a two-thirds exemption. Section 196.192(2), Florida Statutes (1987) states:
All property used predominantly for exempt purposes shall be exempted from ad valorem taxation to the extent of the ratio that such predominant use bears to the nonexempt use.
When first enacted, this section did not contain the ratio-of-exempt-use-to-non-exempt-use language which was added in 1971. It is the additional language which forms the basis for this opinion.
It is our conclusion that the treating of one-third of its patients privately does not constitute a nonexempt use under the facts of this case, and in support of that conclusion, we reproduce several of the findings in the judgment here appealed:
Plaintiff is the only not-for-profit nursing home in Broward County, Florida. All other nursing homes in Broward County are for profit.
* * * * * *
Plaintiffs facilities consist of a four-story building with semiprivate rooms for its patients. There are a few private rooms. Each room has a normal nursing home bed, a wardrobe for personal effects, a cabinet and a chair. There are no telephones or televisions provided for the rooms. The for profit nursing homes in the community have more luxurious facilities and provide more activities and amenities for their patients.
Plaintiff has no stockholders, and no profits or dividends are distributed to its incorporators, directors, members or officers. Furthermore, plaintiffs charter provides that upon its dissolution, all assets remaining after payment of costs and expenses must be distributed to charitable organizations.
* * * * * *
Generally, all of plaintiffs patients come from Broward County, Florida. Most are over the age of sixty-five and the majority are in their eighties. They have usually been hospitalized at some point for fractures, strokes or amputation. Many are admitted with chronic, long-term care diseases such as pulmonary, cardiac, Alzheimer’s conditions or mental impairments. Plaintiff also serves terminally ill cancer patients.
Plaintiff also operates on its premises a clinic for amputees free of charge to members of the local community.
* * * # # *
Plaintiff also routinely writes off charges owed by those private-pay patients who become unable to pay for the services rendered.
‡ # * # % #
For the relevant period, plaintiffs patient population consisted of one-third medicare patients, one-third medicaid patients, and one-third private pay patients. However, regardless of their respective status, all of the patients in plaintiffs facility received the same quality of treatment and service.
# * # * # *
Plaintiffs admission of patients is on a first-come, first-serve basis. There is no admission preference given to either medicare, medicaid or private-pay patients. Furthermore, a medicare patient may become a private-pay patient, and a private-pay patient may become a medicaid patient depending on the changing of circumstances during the patient’s stay. When this occurs, the patient continues to occupy the same bed and receive the same treatment and services as before the change in his status.
Plaintiff receives reimbursement from the government for the services rendered to medicare patients based on the actual costs of the services. There is no room for profit in regards to medicare patients. Furthermore, many for profit nursing homes in Broward County have abandoned the medicare program as there is no profit incentive for taking these patients. However, plaintiff continues to accept medicare patients.
Plaintiff receives reimbursement from the government for the services rendered to medicaid patients based on a flat fee per patient regardless of the particular patient’s need. This reimbursement is below the actual cost to plaintiff of the *942 services rendered to the patients, and therefore, plaintiff suffers a loss in regards to these patients.
* * * * * *
Plaintiff does not make a profit on its private-pay patients nor does it prepare its budget with the expectation of making a profit on private-pay patients. In preparing its budget, plaintiff calculates the overall operating deficiency of treating its medicare and medicaid patients and then computes the amount to be charged to the private-pay patients so as to break even. Therefore, plaintiff uses its private-pay patients only to subsidize the needs of its medicare and medicaid patients.
If plaintiff did not accept private-pay patients and charge the extra amount reflecting the deficiency in serving the medicare and medicaid patients, plaintiff would not be able to serve those medicare and medicaid patients who represent higher costs and who would not be accepted in for profit nursing homes in Broward County.
* * * * # *
There are county and city owned and operated nursing homes in the State of Florida which take a mixture of medicaid and private-pay patients. These nursing homes charge their private-pay patients a larger amount than that which they would receive as reimbursement if they were medicaid patients just as plaintiff does. These nursing homes are exempt from taxation.
As can be readily deduced from the foregoing, no part of this nursing home’s operation is for profit. Many private-pay patients become nonpaying patients and if they do they are not moved to inferior surroundings. All patients receive identical services. There is no admission preference for private-paying patients and payments from them merely subsidize an otherwise losing proposition. When a bed becomes vacant, it is filled on a first-come, first-served basis, regardless of patient status. Significantly, there is no separate wing or building set aside for the paying patients. This case is, therefore, distinguishable from Underhill v. Edwards, 400 So.2d 129 (Fla. 5th DCA 1981), and North Shore Medical Center, Inc. v. Bystrom, 461 So.2d 167 (Fla. 3d DCA 1984), because in both of those controversies, where the appraiser triumphed, there was a separate wing or building set aside for private physicians’ offices, committed to predominantly private use as opposed to charitable activities.
In the case at bar, the appraiser appears to have, perhaps unwittingly, applied a variation of the “income test” but has done so in relation to the patient rather than to the nursing home. That is to say, if there is any patient who somehow has enough income to pay for his or her bed at the charitable home, the appraiser reasons that he can have that bed excised out from the exemption. As to this practice, we refer to a quote from our supreme court in Presbyterian Homes of the Synod of Florida v. Wood, 297 So.2d 556, 558 (Fla.1974):
The “income test” has reference more to the personal economics of a resident or residents of an apartment or room in a home for the aged or disabled than to the overall purpose or use of a home as a religious or charitable institution. It is restrictive in that it is applied pecuniarily and selectively to particular individuals and their apartments or rooms rather than to the general objects of a home provided by church or charitably oriented organizations for their eleemosynary programs.
It is true that Presbyterian Homes is not on all fours because the court in that case was striking down a statute with a prescribed income test. However, that which cannot be done directly by the legislature likewise should not be done indirectly by a property appraiser. Here, as in Presbyterian Homes, a test is being applied pecu-niarily to particular individuals and their rooms, ignoring the general, charitable object and scheme of the eleemosynary institution.
At all events, it is our conclusion that under the facts of this case, this particular nursing home is used for exempt purposes *943 and there is no separable nonexempt use to which a ratio can be appropriately applied.
AFFIRMED.
As to appeal no. 88-1188, it has been consolidated with appeal no. 87-3060, the latter forming the basis for this opinion. However, though the former is not ripe for consideration, due to the lack of a final judgment, the outcome is controlled by what we do here today, and we direct the trial judge to act accordingly.
GUNTHER and STONE, JJ., concur.