# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-0452

_____

EDWARD A. CRAPO, as Alachua
County Property Appraiser, and
JOHN POWER, as Alachua
County Tax Collector,

      Appellants,

      v.

GAINESVILLE AREA CHAMBER OF
COMMERCE, INC., a Florida Not
for Profit Corporation,

      Appellee.

_____

On appeal from the Circuit Court for Alachua County.
Monica J. Brasington, Judge.

May 2, 2019

BILBREY, J.

The Property Appraiser and Tax Collector for Alachua County (hereafter, Alachua County) challenge a final summary judgment holding real property owned by the Gainesville Area Chamber of Commerce to be exempt from ad valorem taxation. We affirm.

Prior to 2014, the Gainesville Area Chamber of Commerce was granted an exemption from ad valorem taxation. However,

in 2014, the Chamber was denied that exemption. It challenged that denial before the Value Adjustment Board, but the Board denied relief. The Chamber then sought relief in the circuit court. Finding the activities of the Chamber to serve a "charitable purpose," the circuit court held the Chamber was entitled to an exemption. Alachua County now challenges that holding.

Unless expressly exempted, all real property in the state is subject to taxation. *See* § 196.001(1), Fla. Stat. (2014). However, Article VII, section 3(a), of the Florida Constitution provides:

> Such portions of property as are used predominantly for educational, literary, scientific, religious or **charitable purposes** may be exempted by general law from taxation.

(Emphasis added).

The term "charitable purposes" is not defined in the Constitution. But the term is defined in section 196.012(7), Florida Statutes (2014), as providing

> a function or service which is of such a community service that its discontinuance could legally result in the allocation of public funds for the continuance of the function or service. It is not necessary that public funds be allocated for such function or service but only that any such allocation would be legal.

This statute is clear and unambiguous, and therefore, we do not engage in any statutory construction. *See State v. Jett*, 626 So. 2d 691, 693 (Fla. 1993) ("It is a settled rule of statutory construction that unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language."). The question presented in this appeal is therefore a simple one: do the activities of the Gainesville Chamber of Commerce qualify as "charitable purposes" as the Florida Legislature has defined that term in section 196.012(7)?

Alachua County has not challenged the findings of fact made by the circuit court that

2

[t]he Chamber is the delegated local provider of economic development and related functions and services which grow the tax base, create jobs and promote the prosperity and general welfare of the Gainesville-Alachua County are. It was established in Alachua County for the express purpose of improving the quality of life in Alachua County through the creation of jobs, increased capital investment, increased local competitiveness for business development, and general economic activity.

(Internal quotation marks omitted).

The trial court also found that the "Chamber does not use its property for a profit-making purpose. All income generated by the Chamber is used for charitable purpose."

Given these activities, the Chamber performs a community service such that a discontinuance of such service "could legally result in the allocation of public funds for the continuance of the function or service." § 196.012(7). As the trial court further found, "there is no doubt that economic development serves a public purpose for which public funds can be allocated." The Department of Economic Opportunity, created by section 20.60, Florida Statutes, is but one example of such a public service. The purpose of this publically-funded department is to "create, expand, and retain business in this state, to recruit business from around the world, and to facilitate other job-creating efforts." § 20.60(4)(a).

While not challenging the constitutionality of section 196.012(7), Alachua County argues that despite its unambiguous language, a tax exemption for "charitable purposes" should be limited to "benevolent" purposes, such as providing material assistance to the needy. As the promotion of business and economic development is not traditionally understood as a charitable activity, property used for business and economic development should not be entitled to a tax exemption under the charitable purposes provision of the state constitution, Alachua County argues.

3

The dissent agrees with Alachua County, but in its analysis, undertakes judicial construction of an unambiguous statute. *See Mendenhall v. State*, 48 So. 3d 740 (Fla. 2010) (holding courts should not construct an unambiguous statute). Further, the dissent has overlooked the plain meaning of section 196.012(7) to impose what it believes should be the meaning of "charitable purposes" under the statute: to provide relief to the needy. While relief to the needy is a laudable charitable purpose, the statute is not so limited. Creating an ambiguity where one did not previously exist would exceed our authority. As the Florida Supreme Court explained in *Velez v. Miami-Dade County Police Department*, 934 So. 2d 1162, 1164-65 (Fla. 2008):

> [W]e are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.

(Quotation marks and citations omitted).

The dissent relies on the Florida Constitution explaining that the "plain meaning of the word 'charitable' as used in the Florida Constitution is controlling, and the statute must be construed as limited to that meaning." (Dissent at p. 13). As noted, Article VII, section 3(a) of the Florida Constitution does indeed provide that the Legislature is to enact laws exempting from taxation property used "predominantly for education, literary, scientific, religious or charitable purposes. . . ." However, as also noted, the Constitution does not define the term "charitable." Therefore, the "plain meaning" on which the dissent relies is not actually provided by our Constitution. Instead, the dissent tries to invoke a well-established canon of construction to reach its conclusion.

The dissent asserts that the Chamber, which argues for affirmance of the lower court's ruling under review, improperly equates "charitable purposes" with "public purposes." But this ignores the fact that it was the Legislature which first equated charitable purpose, for determining tax exemption, with public purpose. The Legislature plainly stated in section 196.012(7)

4

that a charitable purpose is an activity for which "public funds" could be legally allocated.

In conclusion, the function of the Chamber mirrors some of the functions already undertaken by the State, and thus, the Chamber performs a function the discontinuance of which could result in the legal allocation of public funds. Therefore, the Chamber is entitled to an exemption from ad valorem taxation pursuant to the application of the unambiguous terms of section 196.012(7). The trial court's judgment granting such an exemption is AFFIRMED.

ROBERTS, J., concurs; KELSEY, J., dissents with opinion.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

KELSEY, J., dissenting.

The Alachua County Property Appraiser challenges the lower tribunal's decision granting the Gainesville Area Chamber of Commerce a charitable exemption from ad valorem property tax under section 196.012(7), Florida Statutes (2014), which provides as follows:

> "Charitable purpose" means a function or service which is of such a community service that its discontinuance could legally result in the allocation of public funds for the continuance of the function or service. It is not necessary that public funds be allocated for such function or service but only that any such allocation would be legal.

*Id.*

Although the majority holds that this statute requires no interpretation, the operative phrase is ambiguous: "of such a

5

community service that its discontinuance could legally result in the allocation of public funds for the continuance of the function or service." As the Chamber's argument illustrates, it is possible to interpret this language so broadly that every legal expenditure of public funds would become a "charitable" purpose. To equate "public" purpose with "charitable" purpose is to ignore the limited constitutional grant of exemption authority. Further, such an interpretation would eliminate any separate charitable exemption, contrary to well-settled rules of construction requiring us to give effect to every statute and portion thereof. *See Hechtman v. Nations Title Ins. of N.Y.,* 840 So. 2d 993, 996 (Fla. 2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage."). Because the Chamber's and the majority's interpretation of the statute renders the existence of a charitable exemption superfluous, and exceeds the Florida Constitution's limited grant of authority to enact tax exemptions, we must reverse.

## I. Governing Rules of Construction.

We construe the Florida Constitution and Florida Statutes de novo. *Garcia v. Andonie*, 101 So. 3d 339, 343 (Fla. 2012). All property is subject to taxation unless expressly exempted. § 196.001(1), Fla. Stat.; *Capital City Country Club, Inc. v. Tucker,* 613 So. 2d 448, 452 (Fla. 1993). The constitution's limited grant of tax exemption authority is "the touchstone against which the Legislature's enactments are to be judicially measured." *Sebring Airport Auth. v. McIntyre,* 783 So. 2d 238, 244 (Fla. 2001). "The legislature is without authority to grant an exemption from taxes where the exemption does not have a constitutional basis." *Tucker*, 613 So. 2d at 451; *see also Archer v. Marshall*, 355 So. 2d 781, 783-84 (Fla. 1978) (noting the legislature has no power to create a tax exemption that the Florida Constitution does not authorize) (citing *Presbyterian Homes of the Synod of Fla. v. Wood*, 297 So. 2d 556 (Fla. 1974)). Courts are obligated to construe legislation to effect a constitutional outcome whenever possible. *Fla. Dep't of Rev. v. Howard,* 916 So. 2d 640, 642 (Fla. 2005). Tax exemptions must be strictly construed against taxpayers. *Tucker*, 613 So. 2d at 452; *see also Nat. Ctr. For*

6

*Constr. Educ. & Research Ltd. v. Crapo*, 248 So. 3d 1256, 1257-58 (Fla. 1st DCA 2018) (emphasizing strict construction against tax exemptions).

## II. The Chamber's Exemption Claim.

To qualify for a tax exemption, the applicant has the burden of proving first that it is a nonprofit organization. § 196.195(2), (4), Fla. Stat. In addition, "[e]ach applicant must affirmatively show that no part of the subject property, or the proceeds of the sale, lease, or other disposition thereof, will inure to the benefit of its members, directors, or officers or any person or firm operating for profit or for a nonexempt purpose." § 196.195(3), Fla. Stat. The applicant also must satisfy the substantive requirements of the exemption under the Florida Constitution and Florida Statutes.

Before 2014, the Chamber had received the charitable exemption; but beginning in that year, the Property Appraiser denied the exemption.[1] The Chamber challenged the denial before the Value Adjustment Board,[2] which affirmed the Property

---

[1] Each property appraiser is a constitutional officer charged with determining whether real property is subject to ad valorem tax; and if so, valuing the property and assessing tax on it. Art. VIII, § 1(d), Fla. Const. Because tax appraisers are constitutional officers, their decisions are clothed with a presumption of correctness. *Straughn v. Tuck,* 354 So. 2d 368, 371 (Fla. 1977). The state's 67 property appraisers as a group make up a class of constitutional or state officers for purposes of the Florida Supreme Court's review jurisdiction. Art. V, § 3(b)(3). Each property appraiser is entitled to exercise professional judgment in applying the tax laws and regulations to specific factual contexts, and is equally entitled to a change of mind. Each tax year stands alone. The Chamber does not argue that the Property Appraiser had no authority to change his mind about the exemption.

[2] A value adjustment board "is a quasi-judicial body established for the primary purpose of hearing taxpayer petitions and complaints against decisions of the appraiser." *Redford v. Dep't of Rev.*, 478 So. 2d 808, 810 (Fla. 1985). A taxpayer has the

Appraiser's denial of the exemption. The Chamber then challenged the denial de novo in circuit court, resulting in the order now on appeal, which interpreted "charitable purpose" in section 196.012(7) as eliminating any requirement of a traditional charitable purpose under the plain meaning of "charitable."

The Chamber is a typical chamber of commerce as defined in section 501.973(1)(b) of the Florida Statutes. The Chamber is not a tax-exempt charity under the Internal Revenue Code—i.e., not a 501(c)(3) organization. Instead, it is registered under Internal Revenue Code section 501(c)(6), which covers business leagues, chambers of commerce, boards of trade, and the like.[3] The Chamber did not show that "no part" of its property "will inure to the benefit of . . . any person or firm operating for profit or for a nonexempt purpose," nor even address that specific statutory requirement. *See* § 196.195(3), Fla. Stat. The contrary is obvious from the nature and specifics of the Chamber's extensive evidence. That failure alone is sufficient to disqualify the Chamber from receiving a tax exemption, because it makes it impossible for the Chamber to satisfy the statutory definition of a nonprofit applicant. *See* § 196.195(4), Fla. Stat.

The Chamber nevertheless relies on its economic development activities, because it interprets the statutory definition of "charitable purpose" in section 196.012(7) as eliminating any need for a traditional "charitable" purpose. The Chamber presented extensive record evidence of its functions,

option to contest an assessment before the VAB or directly in circuit court. § 194.171, Fla. Stat. A party that is unsuccessful before the VAB may file suit in circuit court. §§ 194.036(2), 194.171, Fla. Stat. Proceedings in circuit court are de novo, not appeals or reviews of VAB decisions. § 194.036(3), Fla. Stat.

[3] Tax-exempt status under the Internal Revenue Code is potentially relevant but not determinative of entitlement to a Florida charitable exemption. A Florida chamber of commerce is permitted to be organized under either section 501(c)(3) or 501(c)(6) of the Internal Revenue Code. § 501.973(1)(b)1., Fla. Stat.

which it describes as being to "grow the tax base, create jobs, and promote economic development." The lower tribunal found that the Chamber works through "the creation of jobs, increased capital investment, increased local competitiveness for business development, and general economic activity." The Chamber develops and implements strategic planning for economic development, brings local leaders into marketing and business-development efforts, tries to attract and then help new businesses coming to the area, helps local businesses expand their reach and activities, hosts and promotes job fairs and networking activities, and numerous other activities along the same lines. To repeat, the Chamber's argument is that all of these activities satisfy the definition of "charitable" in section 196.012(7) because the statute refers to activities for which government could legally pay (whether government actually pays for them or not), which the Chamber interprets as eliminating any requirement that such activities be "charitable" within the traditional plain meaning of that word.

## III. The Statute Cannot, and Does Not, Eliminate "Charitable."

### A. The Plain Constitutional Meaning Controls.

We must begin with the plain language of the Florida Constitution, authorizing the Florida Legislature to enact "charitable" exemptions from ad valorem taxation, among other exempt categories. Art. VII, § 3(a), Fla. Const. In the context of institutions, "charitable" means "liberal in benefactions to the needy; of or relating to charity; 'charitable institutions.'" "Charity" means "an institution engaged in relief of the poor; public provision for the relief of the needy." Merriam-Webster Online Dictionary, *Charitable, Charity* (last visited October 29, 2018).

The statute implementing the charitable exemption, now section 196.012(7), originally consisted only of what is now its first sentence, without the word "legally" in it, thus: "'Charitable purpose' means a function or service which is of such a community service that its discontinuance could result in the allocation of public funds for the continuance of the function or service." The Legislature inserted the word "legally" into this

sentence in 1976, producing this statute: "'Charitable purpose' means a function or service which is of such a community service that its discontinuance could *legally* result in the allocation of public funds for the continuance of the function or service." Ch. 76-234, § 13, Laws of Fla.[4] The final amendment occurred in 1991, when the Legislature added what is now the last sentence in the statute: "It is not necessary that public funds be allocated for such function or service but only that any such allocation would be legal." Ch. 91-196, § 1, Laws of Fla.

Under both the 1885 and 1968 Florida Constitutions, and with or without the statute's two amendments, Florida court decisions for decades have treated cases arising under the statute as if the statute contemplates a "charitable" purpose consistent with the plain meaning of the word. The supreme court in *Miami Battlecreek v. Lummus*, 192 So. 211 (Fla. 1939), addressed a request for a combination exemption as a scientific, educational, and charitable institution operating as a "medical institution, hospital, and sanitarium" with a health-education component. The institution accepted paying patients as well as the indigent; the paying patients outnumbered and subsidized the indigent. *Id.* at 213-14. In discussing the charitable aspect of the combined exemption request, the court described it as being "for the promotion of the general welfare," approved the lower tribunal's definition of a charity as "a gift or dedication of real or personal property . . . for the public benefit," and held that a charitable institution is characterized by "the benefit conferred upon the public . . . and the consequent relief, to some extent, of the burden upon the state to care for and advance the interests of its citizens." *Id.* at 216-18. The court noted that the institution was a tax-exempt charity under federal law, and that no one directly or indirectly profited from the institution's activities. *Id.* at 218. These factors parallel the ordinary meaning of the word "charitable."

_____

[4] The Attorney General opined that this amendment, adding "legally" to the first sentence of the statute, was merely a clarifying amendment that did not change the law's meaning. Op. Att'y Gen. Fla. 77-64 (1977).

Relying in part on *Miami Battlecreek,* the Second District in a case involving a home for the elderly, virtually all of whom paid full freight, held that the charitable tax exemption "cannot be granted under Florida Law . . . absent demonstration that the applicant is committed to a purpose which is charitable, *in a true definitive sense*, and that the property is being used for such purpose." *Haines v. St. Petersburg Methodist Home, Inc.*, 173 So. 2d 176, 180 (Fla. 2d DCA 1965) (emphasis added). The court went on to construe both "charitable" and "benevolent" in this context in their "objective sense of providing relief to those unable to help themselves," with an emphasis on gifts to the poor and helpless:

> "Charity" is sometimes used interchangeably with "benevolence" or "beneficence" in describing good-will, or a helpful attitude or kindly acts, but "charity" is commonly understood more objectively as denoting gifts to the poor or positive steps taken to relieve distress and suffering of those unable to help themselves. It is the latter concept, and not the former, that is consistent with the constitutional and statutory terminology relative to the present case. In context with "charitable" the word "benevolent" is used in the statute, though not in the Constitution, and it has been observed that although every charitable purpose is benevolent the converse is not always true. . . . In the case here, in view of the facts and the ground on which the exemption is sought, we ascribe to the word "benevolent" the same meaning as "charitable" used in its objective sense of providing relief to those unable to help themselves.

*Id.* at 181 (footnote omitted). The court further noted that if it accepted the plaintiff's expansive definition of the charitable tax exemption rather than adhering to the narrow constitutional intent, the resulting flood of exemptions would require legislative remedy: "If our courts should adopt and adhere to the loosely subjective concept of a charitable institution with respect to tax exemption, it would be an enlargement of constitutional meaning presaging further inequity and deterioration of an ad valorem system that could be redeemed only by ultimate reform through legislative channels." *Id.* at 181 n.6.

11

After adoption of the Florida Constitution of 1968 and the Tax Reform Act of 1971, the courts continued to interpret the charitable tax exemption consistent with the plain meaning of "charitable." *Presbyterian Homes* was representative of a spate of litigation surrounding the tax-exempt status of housing "provided by church or charitably oriented organizations" for the elderly where some residents were not poverty-stricken. 297 So. 2d at 558. The narrow issue presented was the construction of the "predominant" use test, which replaced the earlier "exclusive" use test. *Id.* The Florida Supreme Court continued to apply the plain meaning of "charitable." The court rejected a statutory income test as being too narrow to conform to the controlling exemption provisions of the Florida Constitution, which it construed as focused on the charitable nature of the institution providing the service. It noted that the charitable use was the provision of homes for the aged by "modern charitable and religious" institutions, in response to the "drawbacks and hardships [of age] which require special care and attention that are aggravated by indigency." *Id.* at 559. The court cited several earlier cases utilizing that plain meaning of "charitable," and affirmed that such homes, otherwise qualified, would satisfy the charitable tax exemption.

The District Courts of Appeal likewise continued to require a traditional charitable purpose to qualify for a charitable exemption. *See Public Hous. Assistance, Inc. v. Havill*, 571 So. 2d 45 (Fla. 5th DCA 1990) (affirming charitable exemption for low-income housing project created through government grants and producing no income); *Southlake Comty. Found., Inc. v. Havill*, 707 So. 2d 361 (Fla. 5th DCA 1998) (rejecting application of exemption for merely "affordable" housing project as contrasted with that involved in *Public Housing*); *Mikos v. Plymouth Harbour, Inc.*, 316 So. 2d 627, 634-35 (Fla. 2d DCA 1974) (On Petition for Rehearing) (reversing grant of charitable tax exemption to home for the aged that was "the equivalent of a high priced condominium providing luxury living" that catered to high-income residents, and remanding for the owner to attempt to show that if the home stopped operating, government would need to provide those residents with housing).

In 1957, the Attorney General squarely rejected the proposition that chambers of commerce and builders exchanges qualified for the charitable exemption from ad valorem taxation. Op. Att'y Gen. Fla. 57-149 (1957). The reasoning was the same as is employed in the cases cited above and in this opinion: to begin with the language of the constitution, to construe it narrowly, and to reject application of the charitable exemption to such organizations. The Attorney General reasoned that the primary purpose of a chamber of commerce is to promote business, and therefore it has been denied the exemption in jurisdictions addressing the issue; and that cultivating business relations, bringing together competitors in business, and other such purposes does not qualify for a charitable exemption.

The common theme of these and similar authorities is that the reviewing courts either expressly held that a traditional charitable purpose was required, or implicitly required such a traditional charitable purpose. Most cases involved hospitals serving predominantly indigent patients, and organizations providing housing to the indigent, whether elderly or not. The plain meaning of the word "charitable" as used in the Florida Constitution is controlling, and the statute must be construed as limited to that meaning. *Sebring,* 783 So. 2d at 244. We must either construe the statute consistent with its constitutional underpinnings, or declare it unconstitutional. When the statute is properly construed, it becomes clear that the Chamber is not qualified for a charitable tax exemption.

## B. Merging "Public" and "Charitable" Purposes Is Improper.

The Chamber's interpretation of the charitable-exemption statute, extending it to any activity for which a governmental entity could legally expend funds, improperly broadens the "charitable" purpose to become synonymous with any "public" purpose. This violates the rule that tax exemptions must be strictly construed. *See Tucker*, 613 So. 2d at 452. Interpreting the statute without reference to its underlying constitutional limitations would create vast if not limitless exemptions.

Further, contrary to the Chamber's interpretation, the charitable and public purpose exemptions emanate from separate

provisions of the Florida Constitution and separate provisions of the Florida Statutes. The municipal or public purpose exemption is a direct creation of the constitution, while the constitution merely authorizes the other categories of tax exemption; and the two categories of exemption are defined separately in light of their constitutional underpinnings. *Compare* Art. VII, § 3(a), Fla. Const. ("All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation."); § 196.012(6), Fla. Stat. (separately defining and regulating "[g]overnmental, municipal, or public purpose or function") *with* Art. VII, § 3(a), Fla. Const. ("Such portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation."); § 196.012(7), Fla. Stat. (defining "charitable purpose" as "such a community service that its discontinuance could legally result in the allocation of public funds for the continuance of the function or service"). If the two sets of provisions meant the same thing, there would be no need for both. Well-settled rules of construction require us to give separate effect to the separate provisions. *Fla. Dep't of Rev. v. New Sea Escape Cruises, Ltd.*, 894 So. 2d 954, 957 (Fla. 2005).

The Florida Supreme Court in *Sebring* set out the same principles of constitutional and statutory interpretation on which I rely here, with a special emphasis on principles governing tax exemptions. 738 So. 2d at 244-45. The court invalidated a provision of section 196.012(6) that purported to extend a public purpose tax exemption to lessees of public property when the lessees used the property in profit-making enterprises—in that case a raceway and related activities being operated on property leased from a local airport authority. *Id.* at 247-53. The supreme court's analytical process was identical to our reasoning here. The court re-emphasized the primacy of the constitutional grant or limitation of authority to create tax exemptions. 783 So. 2d at 244 ("[I]t is the constitution itself, rather than 'common usage,' which is the touchstone against which the Legislature's enactments are to be judicially measured . . . .") (footnote omitted).

The *Sebring* court rejected the lessee's attempt to import into the tax-exemption statutes authorized under article VII the broader authority for the issuance of bonds for public-private

partnerships under article VII, section 10, dealing with pledging credit. 783 So. 2d at 241, 251; *see also Fla. Dep't of Rev. v. City of Gainesville,* 918 So. 2d 250, 263-64 (Fla. 2005) (refusing to construe "municipal purposes" for use and spending under article VIII as synonymous with "municipal or public purposes" under article VII's exemption provisions). Yet the Chamber's interpretation of the statutory definition of "charitable purpose" in section 196.012(7) as being co-extensive with any "public purpose" under separate provisions partakes of the same analytical error. Although the taxpayer in *Sebring,* like the Chamber here, relied on the argument that its activities provided benefits to the public in the form of entertainment opportunities, community and business competitiveness, and economic development, the court soundly rejected the argument: "[A]s long as the people of Florida maintain the constitution in the form we are required to apply today, neither we nor the Legislature may expand the permissible exemptions [from taxation] based on this type of argument . . . . It is not for this Court or the Legislature to grant ad valorem taxation exemptions not provided for in the present constitutional provisions." 783 So. 2d at 253.

This Court in *City of Gainesville v. Crapo,* 953 So. 2d 557, 563 (Fla. 1st DCA 2007), likewise held that municipal purposes in Article VIII are "distinct from and broader than the definition of public purposes in Article VII." Accordingly, the Court held that "an activity may serve valid municipal purposes under article VIII, section 2(b) and constitute a permissible municipal function but still not serve a municipal or public purpose under article VII, section 3(a)." *Id.*

In support of its argument that "charitable" means "public," the Chamber misplaces its reliance on *Turner v. Trust for Pub. Land,* 445 So. 2d 1124 (Fla. 5th DCA 1984). The court there did not address the constitutional limitation to "charitable" functions. This case involved the sale of a large parcel of land in Volusia County owned by the Trust for Public Land. *Id.* at 1124-25. The Trust was a non-profit organization, and was a charitable organization under Internal Revenue Code section 501(c)(3). 445 So. 2d at 1125. The land was given to the Trust, which later sold it to a water management district substantially below appraised value. *Id.* The property appraiser denied an exemption on the

15

property because the Trust had received it for free and then made a profit on it. The circuit court rejected the property appraiser's argument, and he appealed. On appeal, the court reasoned that the mere fact that the Trust received money from the sale was not controlling; but rather that the Trust's subsequent and typical use of such funds to further its environmental purposes exclusively for public benefit constituted a charitable purpose. *Id.* at 1126. The court did not address the public/charitable dichotomy, but rather focused solely on the Trust's receipt of money following a gift, and whether simply holding vacant land constituted a "use" of the land. *Id.* The court relied on out-of-state cases involving municipal purposes. *Id.* Thus, while the Chamber argues that the *Turner* court implicitly equated charitable and municipal purposes, the argument raised here was not raised there, and we cannot properly conclude that the court intended to create precedent on an issue not expressly argued and decided. Even if *Turner* could validly be read as an express holding on that issue, that interpretation of section 196.012(7) exceeds the Florida Constitution's grant of exemption-making authority.

## C. The Statute Was Not Intended To Exceed The Constitution.

Given that the Legislature is not at liberty to expand tax exemptions beyond what the Constitution authorizes, we must adopt a constitutionally-valid construction of the statute, or invalidate it outright. In this case, if the statute is interpreted in light of its constitutional underpinning and precedent, it is unnecessary to invalidate it. The language of the statute is not ambiguous:

> "Charitable purpose" means a function or service which is of such a community service that its discontinuance could legally result in the allocation of public funds for the continuance of the function or service. It is not necessary that public funds be allocated for such function or service but only that any such allocation would be legal.

§ 196.012(7), Fla. Stat. (2014). It is not the statute that goes too far, but rather the overbroad interpretation being placed upon it. The problem with the Chamber's argument is that it ignores the

16

constitution's limited grant of exemption authority. The statute's threshold reference to a "community service" must be construed within the boundary of that limited *charitable* exemption authority. That is the interpretation given to the charitable exemption continuously in court decisions and an attorney general opinion. The Chamber's argument also improperly presupposes that the Legislature intended to overrule all earlier precedent construing the charitable exemption as embodying the plain meaning of the word "charitable." To the contrary, the Legislature is presumed to know, and to incorporate into its enactments, relevant case law existing prior to an amendment. *Williams v. Jones*, 326 So. 2d 425, 435 (Fla. 1975). The charitable exemption must be limited to charitable services within the plain meaning of the word "charitable"—services for the needy and those otherwise unable to help themselves.

The two amendments to the statute, referencing legal expenditure of public funds, are not properly read as expanding the exemption beyond the constitutional expectation of such a traditionally charitable function. Rather than expanding the exemption, it appears that the language was intended to restrict it by precluding application of the charitable exemption to purposes for which government could not lawfully expend public funds. Private individuals and entities can make charitable expenditures that government cannot. The statute recognizes that limitation.

The Chamber's broad interpretation of the statute is also not supported by the Legislature's description of the 1991 amendment adding the last sentence to the law. Nothing in the legislative history supports the Chamber's interpretation. To the contrary, the public policy rationale for the statutory amendment was described as a way to ensure that "important public services are continued" and that "such services could be provided at no or minimal cost to those that could not afford such services from private, for-profit organizations." Fla. S. Comm. on Fin., Taxation and Claims, S.B. 1226, Staff Analysis 2 (Apr. 3, 1991). That is what the Legislature intended to do in implementing the charitable exemption—adhere to the plain-meaning definition of "charitable" used in the constitution's limited grant of exemption authority.

**IV. Conclusion.**

Section 196.012(7) is not properly severed from its constitutional mooring. The fundamental, constitution-imposed requirement of a "charitable" purpose, in light of the plain meaning and historic usage of that word, controls the interpretation and application of the statute. The lower tribunal erred in ruling otherwise, and we must reverse.

––––––––––––––––––––––––––––––

John C. Dent, Jr., and Jennifer A. McClain of Dent & McClain, Chartered, Sarasota, for Appellant Edward A. Crapo, and Robert C. Swain, Senior Assistant County Attorney, Gainesville, for Appellant John Power.

Paul A. Donnelly and Jung Yoon of Donnelly & Gross, Gainesville, for Appellee.